WILLIAM PARSONS, PLAINTIFF IN ERROR *vs.* BEDFORD, BREED-
LOVE, AND ROBESON, DEFENDANTS.

This action was instituted in the district court of the United States for the east-
ern district of Louisiana, according to the forms of proceedings adopted and
practised in the courts of that state. The cause was tried by a special jury,
and a verdict was rendered for the plaintiff. On the trial, the counsel for the
defendant moved the court to direct the clerk of the court to take down in
writing the testimony of the witnesses examined in the cause, that the same
might appear on record: such being the practice of the state courts of Louisi-
ana; and which practice the counsel for the defendant insisted was to prevail
in the courts of the United States, according to the act of congress of the 26th
of May 1824; which provides, that the mode of proceeding in civil causes, in
the courts of the United States established in Louisiana, shall be conformable
to the laws directing the practice in the district court of the state, subject to
such alterations as the judges of the courts of the United States should esta-
blish by rules. The court refused to make the order, or to permit the testi-
mony to be put down in writing; the judge expressing the opinion, that the
courts of the United States are not governed by the practice of the courts of
the state of Louisiana. The defendant moved for a new trial, and the motion
being overruled, and judgment entered for the plaintiff on the verdict, the de-
fendant brought a writ of error to this court.

Under the laws of Louisiana, on the trial of a cause before a jury, if either party
desires it, the verbal evidence is to be taken down in writing by the clerk, to
be sent to the supreme court, to serve as a statement of facts in case of appeal;
and the written evidence produced on the trial is to be filed with the proceed-
ings. This is done to enable the appellate court to *exercise the power of grant-
ing a new trial, and of revising the judgment of the inferior court.* *Held*
that the refusal of the judge of the district court of the United States to per-
mit the evidence to be put in writing, could not be assigned for error in this
court, the cause having been tried in the court below, and a verdict given
on the facts by a jury; if the same had been put in writing, and been sent up
to this court with the record, this court, proceeding under the constitution of
the United States, and of the amendment thereto, which declares, *"no fact
once tried by a jury shall be otherwise re-examinable in any court of the
United States, than according to the rules of the common law,"* is not com-
petent to redress any error by granting a new trial.

The proviso in the act of congress of the 26th of May 1824, ch. 181, demon-
strates that it was not the intention of congress to give an absolute and impe-
rative force to the state modes of proceeding in civil causes in Louisiana, in the
courts of the United States; for it authorizes the judge to modify them so as to
adapt them to the organization of his own courts; and it further demonstrates
that no absolute repeal was intended of the antecedent modes of proceeding
authorized in the United States courts, under former acts of congress; for it

VOL. III.—3 E

[Parsons *vs.* Bedford et al.]:

. leaves the judge at liberty to make rules, by which discrepancy between the state laws and the laws of the United States may be avoided. [444]

The act of congress having made the practice of the state courts the rule for the courts of the United States in Louisiana, the district court of the United States in that district is bound to follow the practice of the state ; unless that court had adopted a rule superseding the practice. [445]

Generally speaking, matters of practice in inferior courts do not constitute subjects upon which errors can be assigned in the appellate court. [445]

The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. The right to such a trial is, it is believed, incorporated into, and secured in every state constitution in the union. [446]

By " common law," the framers of the constitution of the United States meant, what the constitution denominated in the third article, " law ;" not merely suits which the common law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were regarded, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law and of maritime law and equity was often found in the same suit. [447]

The amendment to the constitution of the United States, by which the trial by jury was secured, may, in a just sense, be well construed to embrace all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights. [447]

It was not the intention of congress, by the general language of the act of 1824, to alter the appellate jurisdiction of this court, and to confer on it the power of granting a new trial by a re-examination of the facts tried by a jury ; and to enable it, after trial by jury, to do that, in respect to the courts of the United States sitting in Louisiana, which is denied to such courts sitting in all the other states of the union. [447]

No court ought, unless the terms of an act of congress render it unavoidable, to give a construction to the act which should, however unintentional, involve a violation of the constitution. The terms of the act of 1824 may well be satisfied by limiting its operation to modes of practice and proceeding in the courts below, without changing the effect or conclusiveness of the verdict of a jury upon the facts litigated on the trial. The party may bring the facts into review before the appellate court, so far as they bear upon questions of law, by a bill of exceptions. If there be any mistake of the facts, the court below is competent to redress it, by granting a new trial. [447]

ERROR to the eastern district of Louisiana.

This suit was originally brought in the parish court of New Orleans by the defendants in error, by a petition for an attachment against the property of the defendant in the suit ; and was removed into the district court of the United States for the eastern district of Louisiana, the defendant being a citizen of the state of Massachusetts.

The object of the suit was the recovery of the amount of certain sales of tobacco, made by the plaintiffs to a certain

Eben Fiske, represented in the petition to be the agent and factor of the defendant; and for which he drew bills of exchange on the defendant, and which bills were refused acceptance and payment. After an answer had been filed, the case was submitted to a special jury, and a verdict was rendered for the plaintiffs for $6414.

The proceedings in the case were instituted and conducted according to the laws of Louisiana, which conform in a great degree to the principles and practice of the civil law.

On the trial, the plaintiffs produced the bills of exchange mentioned in the petition, and many letters written by the defendant to Fiske, The defendant introduced, as testimony, other letters written as above; and also the record of a suit brought by the plaintiffs against Fiske, on the same bills, in which they charge, on oath, that *the sale was made to Fiske*, and that *he* was their debtor; all which written testimony was, according to the practice of the state courts, filed in court, and forms part of the record.

The plaintiffs also produced Fiske as a witness, to prove that he acted only as agent for the defendant, and to make him a witness, gave a full release of all claims on him. He was objected to; but the court overruled the objection, and a bill of exceptions was tendered and signed.

By the twelfth section of an act of the general assembly of Louisiana, passed the 20th of July 1817, entitled an act "to amend the several acts passed to organize the court of the state, and for other purposes," it is among other things enacted, "that when any cause shall be submitted to a jury to be tried, the verbal evidence shall, in all cases where an appeal lies to the supreme court, if either party require it, and at the time when the witnesses shall be examined, be taken down in writing by the clerk of the court, in order to be sent up to the supreme court, to serve as a statement of facts in case of appeal; and the written evidence produced by both parties shall be filed with the proceedings."

By a law of the United States, passed the 26th of May 1824, the mode of practice pursued in the state courts is directed to be followed in the courts of the United States in Louisiana.

Under the provisions of these laws, the defendant applied to the court to direct the clerk to take down the verbal proof offered in the cause, or to suffer his counsel, the counsel of the plaintiffs, or the witnesses, to take it down; which the judge refused to do: whereupon a bill of exceptions was tendered and signed.

A motion was made for a new trial, which was overruled; and a judgment was entered for the amount of the verdict. This writ of error was then prosecuted.

The plaintiff in error contended:

1. That from the facts apparent on the record, the plaintiffs had no right of action against the defendant, and that therefore this court will decree a judgment to be entered in favour of the defenda. t.

2. The court will, at least, reverse this judgment, and award a new trial, for one or all of the following reasons:

1. Because the court refused the evidence to be put upon the record.

2. Because the whole question was a question of law, and the decision was against law.

3. It is not, strictly, a common law proceeding, but a proceeding under the peculiar system of Louisiana; and, according to that system, the court has power to reverse the judgment, under circumstances which would not give it that power when the trial had been according to the common law.

The case was argued by Mr Livingston and Mr Webster for the plaintiff in error, and by Mr Jones for the defendants.

Mr Livingston and Mr Webster, for the plaintiff in error.

The law of Louisiana, of July 1817, directs that in all jury trials, the verbal evidence shall be reduced to writing, and put on record. The law of congress of the 6th of May 1824, directs that the practice in the courts of the United States, in the state of Louisiana, shall be according to the rules of practice in the state courts. Before the law of the United States of 1803, all causes came up to this court by writ of error. Under the authority of this law, cases of admiralty and of equity jurisdiction came up by appeal, and

[Parsons *vs.* Bedford *et al.*]

all cases not embraced by the provisions of the law, are yet brought up by writ of error.

The constitution of the United States says, " all controversies" between citizens of different states may come to this court; and by the provisions of the law of 1789, the removal of such cases is to take place when the matter in dispute amounts to two thousand dollars. That law requires a statement of the evidence in appeals, and in matters of admiralty jurisdiction. It cannot be supposed that there was any intention to exclude cases such as the present from the jurisdiction of this court. It has been the practice for twenty years, ever since the organization of the courts of the United States in the state of Louisiana, to bring cases up from that district.

The proceedings in the courts of Louisiana are by petition and answer. To introduce the practice of the common law into any of the courts established in that state, would be against the feelings and wishes of the whole people of the state. The judges of the courts of the United States have adopted the practice of the courts of the state. The position of any one who should come from a state where the common law is not known, as from Louisiana, and who should be required to argue a cause on the common law alone, in this court, would be extraordinary.

The twenty-second section of the judiciary law of 1789 says, the supreme court shall not reverse a judgment for error in fact. But it is claimed, that the seventh amendment of the constitution of the United States, which declares that " no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law," was not intended to take away a remedy which was secured by a law of the state of Louisiana ; and which law is in force in the courts of the United States, under the provisions of the act of congress of 1824.

This case cannot come within the amendment. It is a case not comprehended by it, nor can it have any application to it. The amendment was adopted when all the proceedings in the courts of the United States, and in the courts of

the different states, were under the common law; and the plaintiff in this case has a complete remedy, independent of the amendment. It was intended to guard the rights of citizens, proceeding according to the common law; and it only provides that the decisions of juries shall not be set aside except according to the common law. How can it apply or operate in a state where there is no common law, where the forms of proceeding under the common law are not known or permitted? Where terms are used which embrace the case, and justice requires it, the law must be construed to embrace it. A constitutional law of the United States gives the relief the plaintiff asks in this case: the amendment of the constitution referred to does not take it away.

There is a rule of the common law, the effect of which gives the same remedy as to parties as that which is required here; and in this case the equivalent remedy would have been furnished, had the court directed the clerk to take down in writing the testimony given in this cause. By the common law practice, all evidence may be stated under a bill of exceptions, or the judge may be called upon to charge on the law and facts; the facts being stated from which the law is supposed to arise. The proceedings in the courts of Louisiana are substituted for these common law proceedings. They should have the same estimate, and be treated in the higher court in the same manner as a bill of exceptions. It is admitted that in the court below, the case must proceed according to the state laws: those laws say, the evidence shall be put in writing by the clerk. The refusal to permit the clerk to do this was certainly error.

If the laws of the state are not to be the guide, we had better have no right of appeal from the courts of Louisiana to this court. If those laws do not furnish rules of proceeding, we have no appeals in cases where appeals may come from other states. Because, in the courts of Louisiana there is no distinction between common law and equity; and there cannot be one rule in a state court, and another in a federal court. The principle that no relief shall be given in equity where there is a plain remedy at law, would interfere mate-

rially with proceedings in the courts of Louisiana. In every possible case relief is given by a court of law in Lquisiana; and the distinction between law, and equity is not there known. To insist on the establishment of the distinction in the courts of the United States there, would be productive of grievous injury. It would give a foreigner one rule of practice and a citizen another. If the forms of the common law must be pursued to secure writs of error and appeals from the courts of the United States in Louisiana to this court, all the system of practice now prevailing in those courts, under the authority of the law of 1824, must be changed. The forms of the common law, the distinctions between proceedings at law and in equity, must be established there. This will be productive of great inconvenience, and will have other injurious effects.

Putting the evidence in writing was very important to the defendant below, as he could have demurred; and then this court would have had the whole of the evidence before them.

Mr Jones, for the defendant in error.

Where a local practice, such as that of Louisiana, is adapted only to state courts, and not to the courts of the United States, it will not extend to the latter courts. The supreme court of the state of Louisiana may know and examine the facts which have been reduced to writing on the trial of causes in the inferior courts, and decide whether a new trial should not have been granted. But no such power exists in this court. It has no power to look into the facts of the case tried by a jury, only for the purpose of deciding on the law arising on the evidence; and this, when they are properly before the court, but not for the purpose of drawing a conclusion from the facts, different from that of the jury. The judiciary law excludes matters of fact from this court, unless in equity and admiralty causes. This court will never decide on questions of fact; never on a question of new trial, or not; and the only possible use of putting the evidence in writing, in this case, would have been to present the question of a new trial. This court takes no cognizance of any fact, sitting as a court of common law. A compliance or

non-compliance of the court below with the defendant's prayer, could neither affect the judgment of the court below, or of this court; the judgment here must be the same, whether the evidence was recorded or not. There was therefore no error of which this court can take notice in the proceedings below. The proceedings are said not to be according to the common law, but to the law of Louisiana, which is said to differ from the common law; and yet we find the trial by jury established, which is the great foundation and first principle and essence of a common law trial, be the forms of the process what they may. Trial by jury carries with it all the incidents of a common law trial. The verdict of the jury upon the facts is conclusive in every court, unless set aside by the court before which the cause was tried.

This court will not reverse all its functions, because the courts of the United States in Louisiana adopt the state practice. The judiciary act says, all trials in issues of fact, shall be by jury; this court will not say, as a rule of practice, there shall be no trial by jury according to the principles of the common law in the courts of the United States of Louisiana. As Louisiana has adopted the trial by jury, it must have all its attributes in that state.

The purpose and meaning of the twenty-second section of the judiciary act, was to exclude this court in all cases from deciding on a question of fact. Error in fact, means an error in deciding on a question of fact. The difference between a writ of error and an appeal is very familiar. Appeals, ex vi termini, mean, the bringing up of every matter pending in the court below. A writ of error only reaches errors of law, and has nothing to do with questions of fact.

If the law of 1824 imposed on the court the duty of recording the parol evidence, is it assignable for error? Could it by any possibility have varied the judgment of the court below, or of this court? If it could not, there can be no cause of reversal, as no injury has been done to the plaintiff in error. This court will not visit the party with a reversal of the judgment of the district court, when in the judgment there is no error; although they may compel the court below to record the evidence.

[Parsons *vs.* Bedford et al.]

Mr Justice Story delivered the opinion of the Court.

This is a writ of error to the district court of the United States for the eastern district of Louisiana.

The facts disclosed on the record are substantially as follows:

The suit was originally commenced by an attachment, brought in the parish court of New Orleans, and removed, on the petition of defendant, into the district court of the United States for the eastern district of Louisiana: the plaintiffs being citizens of Louisiana, and the defendant a citizen of Massachusetts.

The petition of the plaintiffs set out the ground of their action to be certain sales of tobacco, made by them to one Eben Fiske, as the factor and agent of the defendant, and for his account, at New Orleans, in June and July 1825; and certain bills of exchange drawn in their favour by Fiske at New Orleans, on the defendant at Boston, at several dates from the 2d to the 20th of July 1825, for the amounts of such sales. The defendant's answer (filed in the district court after the removal of the cause from the parish court) contains a general traverse of the allegations of the plaintiffs' petition, and tenders an issue, tantamount to the general issue of nil debet. The answer concludes with a petition of reconvention for ten thousand dollars damages. Upon this issue the cause was tried in the district court, by consent of parties, before a special jury, in March 1826, and a verdict passed against the defendant; who moved the court for a new trial; which motion was overruled by the court, and final judgment rendered on the verdict against the defendant, who thereupon sued out this writ of error. The record presents two bills of exceptions on the part of the defendant, now plaintiff in error.

First bill of exceptions. Fiske, having first received from the plaintiffs a full and absolute release (which recites that the plaintiffs had dealt with him as the factor and agent of the defendant, and upon the credit and responsibility of the latter alone,) from all liability to them on the contract of sale and as drawer of the bills, was produced as a witness on the part of the plaintiffs to prove that he had purchased the

tobacco as agent for the defendant. An objection on the part of the defendant to the competency of Fiske, on the ground of interest, was overruled by the court.

Second bill of exceptions. The defendant moved the court to direct the clerk of the court to take down in writing the testimony of the several witnesses examined by the respective parties, in order that the same might appear of record ; such being the practice of the several courts of the state of Louisiana, according to the constitution and laws thereof, and such being the rule of practice, in the opinion of the counsel for defendant, to be pursued in this court, according to the act of congress of the 26th of May 1824. But the clerk refused, &c., and the court refused to order the clerk to write down the same, or to permit the witnesses themselves, the counsel for either of the parties, or any other person, to write down such testimony ; the court expressing the opinion that the court of the United States is not governed by the practice of the courts of the state of Louisiana.

No charge or advice whatever was given or asked from the court to the jury on any matter of law or fact in the case : nor was any question whatever raised of the competency or admissibility of such evidence, other than the specific exception before taken to the competency of Fiske, on the sole objection of interest ; the substance of the facts proved by him being in no manner drawn in question before the court.

The record sets out all the documentary evidence ; all of which appears to have been admitted by both parties. This consists of the protested bills above mentioned, with an admission upon the record by the defendant, that they had been regularly returned under protest to the plaintiffs, and that plaintiffs were, at the time the suit was commenced, the holders and owners of the same : and of a series of defendant's letters to his agent Fiske, from the 26th of March 1823 to the 10th of August 1825, containing evidence that Fiske, during all that time, was settled at New Orleans, and was the factor and agent of the defendant, there to receive shipments of cargoes from Boston for the New Orleans market, and to purchase and ship from the latter place to the

defendant at Boston, cargoes of cotton and tobacco, for which he was authorised to draw bills on Parsons at Boston.

Upon the argument in this court the first bill of exceptions has been abandoned as untenable, and in our judgment upon sound reasons.

The second bill of exceptions is that upon which the court is now called upon to deliver its opinion.

By the act of Louisiana of the 28th of January 1817, section 10, it is provided, that in every case to be tried by a jury, if one of the parties demands that the facts set forth in the petition and answer should be submitted to the jury to have a special verdict thereon, both parties shall proceed, before the swearing of the jury, to make a written statement of the facts so alleged and denied, the pertinency of which statement shall be judged of by the court, and signed by the judge; and the jury shall be sworn to decide the question of fact or facts so alleged and denied, and their verdict or opinion thereof shall be unanimously given in open court, &c. and be conclusive between the parties as to the facts in said cause, as well in the court where the said cause is tried, as on the appeal, and the court shall render judgment; provided, that the jury so sworn shall be prohibited to give any general verdict in the case, but only a special one on the facts submitted to them. This section points out the mode of obtaining a special verdict, in the sense of the common law. The twelfth section then provides, that when any cause shall be submitted to the court or to a jury without statements of facts, as is provided in the tenth section of the act, the verbal evidence shall in all cases where an appeal lies to the supreme court of the state, if either party requires it, and at the time when the witnesses shall be examined, be taken down in writing by the clerk of the court, in order to be sent up to the supreme court, *to serve as a statement of facts in case of appeal;* and the written evidence produced on the trial shall be filed with the proceedings, &c. &c. The object of this section is asserted to be to enable the appellate court in cases of general verdicts, as well as of submissions to the court, to exercise the power of granting a new trial, and revising the judgment of the inferior court.

It seems to be a substitute for the report of the judge who sat at the trial, in the ordinary course of proceedings at the common law.

Of itself, the course of proceeding under the state law of Louisiana could not have any intrinsic force or obligation in the courts of the United States organized in that state: but by the act of congress of the 26th of May 1824, ch. 181, it is provided that the mode of proceeding in civil causes in the courts of the United States that now are or hereafter may be established in the state of Louisiana, shall be conformable to the laws directing the mode of practice in the district courts of the said states; provided, that the judge of any such court of the United States may alter the times limited or allowed for different proceedings in the state courts, and make by rule such other provisions as may be necessary to adapt the laws of procedure to the organization of such court of the United States, and to avoid any discrepancy, if any such should exist, between such state laws and the laws of the United States.

This proviso demonstrates, that it was not the intention of congress to give an absolute and imperative force to the modes of proceeding in civil causes in Louisiana in the court of the United States; for it authorises the judge to modify them, so as to adapt them to the organization of his own court. It further demonstrates, that no absolute repeal was intended of the antecedent modes of proceeding authorised in the courts under the former acts of congress, for it leaves the judge at liberty to make rules by which to avoid any discrepancy between the state laws and the laws of the United States; and what is material to be observed, there is no clause in the act pointing in the slightest manner to any intentional change of the mode in which the supreme court of the United States is to exercise its appellate power in causes tried by jury, and coming from the courts of the United States in Louisiana; or giving it authority to revise the judgments thereof in any matters of fact, beyond what the existing laws of the United States authorised.

Whether the district court in Louisiana had adopted any rules on this subject, so as to modify or suspend the opera-

tion of the Louisiana state practice, in relation to the taking down the verbal testimony of witnesses, does not appear upon this record. The court expressed an opinion, " that the court of the United States is not governed by the practice of the courts of the state of Louisiana ;" and this would be correct, if, in the particular complained of, the court had adopted any rule superseding that practice. If no such rule had been adopted, the act of congress made the practice of the state the rule for the court of the United States. Unless, then, such a special rule existed, the court was bound to follow the general enactment of congress on the subject, and pursue the state practice.

But, admitting that the decision of the court below was wrong, and that the party was entitled to have his testimony taken down in the manner prayed for ; still it is important to consider, whether this is such an error as can be redressed by this court upon a writ of error.

Generally speaking, matters of practice in inferior courts do not constitute subjects upon which error can be assigned in the appellate court. And unless it shall appear that this court, if the omitted evidence had been before it on the record, would have been entitled to review that evidence, and might, if upon such review it had deemed the conclusion of the jury erroneous, have reversed the judgment and directed a new trial in the court below ; there is no ground upon which the present writ of error can be sustained.

It was competent for the original defendant to have raised any points of law growing out of the evidence at the trial, by a proper application to the court ; and to have brought any error of the court in its instruction or refusal, by a bill of exceptions, before this court for revision. Nothing of this kind was done or proposed. No bill of exceptions was tendered to the court, and no points of law are brought under review. The whole object, therefore, of the application to record the evidence, so far at least as this court can take cognizance of it, was to present the evidence here in order to establish the error of the verdict in matters of fact. Could such matters be properly cognizable in this court upon the present writ of error? It is very certain that they

could not upon any suit and proceedings in any court of the United States, sitting in any other state in the union than Louisiana.

The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. The right to such a trial is, it is believed, incorporated into, and secured in every state constitution in the union; and it is found in the constitution of Louisiana. One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the constitution was adopted, this right was secured by the seventh amendment of the constitution proposed by congress; and which received an assent of the people so general, as to establish its importance as a fundamental guarantee of the rights and liberties of the people. This amendment declares, that " in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact once tried by a jury shall be otherwise re-examinable in any court of the United States, than according to the rules of the common law." At this time there were no states in the union, the basis of whose jurisprudence was not essentially that of the common law in its widest meaning; and proba- bly no states were contemplated, in which it would not exist. The phrase " common law," found in this clause, is used in contradistinction to equity, and admiralty, and maritime ju- risprudence. The constitution had declared, in the third arti- cle, " that the judicial power shall extend to all cases in *law and equity* arising under this constitution, the laws of the United States, and treaties made or which shall be made under their authority," &c. and to all cases of *admiralty and maritime jurisdiction.* It is well known, that in civil causes, in courts of equity and admiralty, juries do not in- tervene, and that courts of equity use the trial by jury only in extraordinary cases to inform the conscience of the court. When, therefore, we find that the amendment requires that the right of trial by jury shall be preserved in suits at com-

mon law, the natural conclusion is, that this distinction was present to the minds of the framers of the amendment. By *common law*, they meant what the constitution denominated in the third article "law;" not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit. Probably there were few, if any, states in the union, in which some new legal remedies differing from the old common law forms were not in use; but in which, however, the trial by jury intervened, and the general regulations in other respects were according to the course of the common law. Proceedings in cases of partition, and of foreign and domestic attachment, might be cited as examples variously adopted and modified. In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights. And congress seems to have acted with reference to this exposition in the judiciary act of 1789, ch. 20, (which was contemporaneous with the proposal of this amendment); for in the ninth section it is provided, that " the trial of issues in fact in the *district courts* in all causes, except civil causes of *admiralty and maritime jurisdiction*, shall be by jury;" and in the twelfth section it is provided, that " the trial of issues in fact in the *circuit courts* shall in all suits, except these of *equity*, and of *admiralty* and *maritime jurisdiction*, be by jury;" and again, in the thirteenth section, it is provided, that " the trial of issues in fact in the *supreme* court *in all actions at law* against citizens of the United States, shall be by jury."

But the other clause of the amendment is still more important; and we read it as a substantial and independent clause. " No fact tried by a jury shall be otherwise re-examinable, in any court of the United States, than according to the rules of the common law." This is a prohibition to the

courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable; or the award of a venire facias de novo, by an appellate court, for some error of law which intervened in the proceedings. The judiciary act of 1789, ch. 20, sec. 17, has given to all the courts of the United States " power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law." And the appellate jurisdiction has also been amply given by the same act (sec. 22, 24) to this court, to redress errors of law; and for such errors to award a new trial, in suits at law which have been tried by a jury.

Was it the intention of congress, by the general language of the act of 1824, to alter the appellate jurisdiction of this court, and to confer on it the power of granting a new trial by a re-examination of the facts tried by the jury? to enable it, after trial by jury, to do that in respect to the courts of the United States, sitting in Louisiana, which is denied to such courts sitting in all the other states in the union? We think not. No general words, purporting only to regulate the practice of a particular court, to conform its modes of proceeding to those prescribed by the state to its own courts, ought, in our judgment, to receive an interpretation which would create so important an alteration in the laws of the United States, securing the trial by jury. Especially ought it not to receive such an interpretation, when there is a power given to the inferior court itself to prevent any discrepancy between the state laws and the laws of the United States; so that it would be left to its sole discretion to supersede, or to give conclusive effect in the appellate court to the verdict of the jury.

If, indeed, the construction contended for at the bar were to be given to the act of congress, we entertain the most serious doubts whether it would not be unconstitutional. No court ought, unless the terms of an act rendered it unavoidable, to give a construction to it which should involve a vio-

[Parsons *vs*. Bedford et al.]

lation, however unintentional, of the constitution. The terms of the present act may well be satisfied by limiting its operation to moues of practice and proceeding in the court below, without changing the effect or conclusiveness of the verdict of the jury upon the facts litigated at the trial.   Nor is there any inconvenience from this construction; for the party has still his remedy, by bill of exceptions, to bring the facts in review before the appellate court, so far as those facts bear upon any question of law arising at the trial; and if there be any mistake of the facts, the court below is competent to redress it, by granting a new trial.

Our opinion being that, if the evidence were now before us, it would not be competent for this court to reverse the judgment for any error in the verdict of the jury at the trial; the refusal to allow that evidence to be entered on the record is not matter of error, for which the judgment can be reversed.   The judgment is therefore affirmed, with six per cent damages and costs.

Mr Justice M'LEAN, dissenting.

This cause was removed from the district court of Louisiana by a writ of error; and a reversal of the judgment is prayed for, on the errors assigned.

The suit was originally brought in the parish court of the parish of New Orleans, and was removed to the district court of the United States, which exercises the powers of a circuit court.

In their petition, the plaintiffs below state that one Eben Fiske, as agent at New Orleans for William Parsons, the defendant, residing at Boston, purchased from the plaintiffs large quantities of tobacco, and drew bills on the defendant in payment, which he refused to honour.   The plaintiffs claim 10,000.

The defendant, in his answer, denies the material facts set forth in the petition.  A jury was impannelled, and a verdict rendered for $6484.   On the trial, the bills of exchange were produced, and a great number of business letters between Parsons and Fiske were read.

Fiske was sworn as a witness, though objected to on the

VOL. III.—3 G

[Parsons *vs.* Bedford et al.]

ground of interest; but a release removed the objection to his competency.

The first assignment of error relied on is, that from the facts apparent on the record, the plaintiffs had no right of action against the defendant, and that therefore this court will decree a judgment to be entered in favour of the defendant.

2. That they will, at least, reverse this judgment, and award a new trial, for one of the following reasons:

1. Because the court refused to direct the evidence to be put upon the record.

2. Because the whole question was a question of law, and the decision was against law.

3. It is not strictly a common law proceeding; but a proceeding under the peculiar system of Louisiana; and according to that system, the court has power to reverse the judgment, under circumstances which would not give it that power where the trial had been according to the common law.

As this cause involves a constitutional question, which has not been settled by this court, and as I am so unfortunate as to differ in opinion with a majority of the members of the court, I shall, with great deference, present my views of the case.

In the state of Louisiana, the principles of the common law are not recognized; neither do the principles of the civil law of Rome furnish the basis of their jurisprudence. They have a system peculiar to themselves, adopted by their statutes, which embodies much of the civil law, some of the principles of the common law, and, in a few instances, the statutory provisions of other states. This system may be called the civil law of Louisiana, and is peculiar to that state.

The modes of proceeding in their courts are more nearly assimilated to the forms of chancery than to those of the common law. The plaintiff files his petition, in which he sets forth the ground of complaint and the relief prayed for. Process issues against the defendant; and when he is in court, he is ruled to answer the bill. The answer is filed, in which he admits, denies, or avoids the facts set forth in the petition,

[Parsons *vs.* Bedford et al.]

the same as in a suit in chancery; and he is permitted, in his answer, to set up a demand against the plaintiff, which he may recover if sustained.

When the cause is brought to a hearing, the court decides the facts and the law, if neither party requires a jury. The testimony is taken down at the trial, and either party may move for a new trial, or take an appeal to the superior court.

If an appeal be taken, the testimony forms a part of the record, and is re-examined by the appellate court. Either party has a right to require a jury in the inferior court, and also to demand that the testimony be taken down at the trial; so that it may form a part of the record, and be considered by the appellate court, should an appeal be taken.

If either party desires what is called in the statute a special verdict, each party makes a statement of facts, which exhibit the grounds of controversy; and these statements are submitted to the jury with the testimony in the case. In this case, also, if either party requires it, the testimony must be taken down at the trial.

The facts found by the jury are examined by the appellate court, and its judgment is given on the facts without the intervention of a jury.

Such is the outline of the course of practice in the courts of Louisiana. A court of chancery there is as little known, and the rules of its proceedings as little regarded, as are those of a court of common law. Redress is sought in substantially the same manner for an injury done to the person, his property or character. Whether he seeks to recover a debt, or asks the specific execution of a contract, or to avoid a contract on the ground of fraud or accident, the mode of proceeding is the same; he files his petition, and the defendant must answer.

In thus repudiating the forms and principles of the common law, the state of Louisiana has pursued a course different from her sister states. This has resulted from the views of jurisprudence derived by the great mass of her citizens from the foreign governments with which they were recently connected.

It is no doubt a wise policy to adapt the principles of

government to the moral and social condition of the govern-ed. This is no less true in a judicial than it is in a political point of view; and where an intelligent people possess the sovereign power, they will not fail to secure this first object of a good government.

By an act of congress of the 26th of May 1824, it is provided that the mode of proceeding in civil causes in the courts of the United States, that now are, or hereafter may be established in the state of Louisiana, shall be conformable to the laws directing the mode of practice in the district courts of the said state: provided, that the judge of any such court of the United States may alter the times limited or allowed for different proceedings in the state courts, and make, by rule, such other provisions as may be necessary to adapt the said laws of procedure to the organization of such court of the United States, and to avoid any discrepancy, if any such exist, between such state laws and the laws of the United States.

There is no evidence before the court that the power given to the district judge in this proviso has been exercised: the first part of the section, which adopts in the district court of the United States the same mode of proceeding in civil actions as is established in the courts of the state, must therefore be considered as in force. And until this power be exercised, this section is a virtual repeal of so much of the judiciary act of 1789, and all other acts prior to 1824, which came within its provisions. It is contended, that whatever may be the rules of practice in the district court of Louisiana, they do not confer jurisdiction on this court. The force of this objection is admitted.

Any law regulating the practice of an inferior court does not confer jurisdiction on an appellate court; but where such court has jurisdiction of the case, it must be governed in its decision by the rules of practice in the court below.

This court has jurisdiction by writ of error to revise the final judgment, in any civil action, of a circuit court of the United States where the matter in controversy exceeds two thousand dollars. Whether this judgment be obtained by the forms of the civil or the common law is immaterial.

[Parsons vs. Bedford et al.]

The only essential requisites to give jurisdiction are, that it be a civil action, involving a matter in controversy exceeding two thousand dollars ; and that the judgment be final.

The forms of proceeding adopted under the Louisiana practice, in the district court, constitute no objection to a revision of its final judgments by writ of error.

In the case of Parsons against Armor, brought to this court by writ of error from Louisiana, and decided the present term, the court has sustained its jurisdiction. That case in no respect differs in principle from this; except that the amount due was ascertained by the court in that cause, and in this by a jury. Both causes were brought against Parsons to recover the price of certain quantities of tobacco sold to Fiske, the alleged agent of the defendant. The same testimony was used in both causes, with the exception of the bills of exchange.

In the case of Armor, the court looked into the testimony, which was certified as a part of the record. From this testimony it appeared that Fiske acted as the factor of Parsons, and in no other respect as his agent; that Parsons looked to Fiske for the faithful disbursement of the funds placed in his hands, and the purchases were made in his name, and the payments sometimes in drafts, and at others in cash; that the credit was given to Fiske and not to Parsons by the vendors of the articles purchased. The court therefore reversed the judgment obtained against Parsons in the district court.

The testimony, thus examined by the court, was not made a part of the record by a bill of exceptions, but was taken down at the trial. Had this been done in a case at common law, the court would not have considered the testimony as a part of the record ; and consequently they could not have looked into it in deciding the cause. But the practice of the district court, under the sanctions of the act of 1824, was considered as presenting the testimony in that cause as fully to the consideration of this court, as in a case at common law, where it is embodied in a bill of exceptions. The facts being ascertained by the court, on weighing the testimony the law was pronounced in its judgment.

The law of Louisiana requires the testimony to be taken down, if demanded by either party, as well where a jury is impannelled as where the cause is submitted to the court. But in the case under consideration, the court, at the trial, refused to order the testimony to be taken in writing, although a motion to that effect was made. This refusal is the principal ground on which the plaintiff in error relies for the reversal of this judgment. He claimed a right secured to him by law, which was refused; and he seeks redress by writ of error.

This redress cannot be given, it is urged; because, if the testimony had been taken down, it could have been of no advantage to the plaintiff in error, as this court could not examine it. And why may not this testimony be examined by the court, the same as in the case of Armor. The facts are the same, and no difference exists in the merits of the claims.

The reply is, that in this case a jury passed upon the claim, and in the other the court, exercising the functions of a jury, decided both the fact and the law. The difference then consists in this; that the jury found the facts in the one case, and the court in the other; and in both cases the law was pronounced by the court.

This difference in the mode of decision, it would seem, ought not to affect the judgment of this court, unless there be some positive provision of law which must control it.

The seventh article of the amendment of the constitution is referred to as conclusive on the point. It reads, " in all suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

To this objection an answer may be given, which to me is satisfactory.

This is not a suit at common law, and therefore does not come strictly within the provision of the article.

In what respect can this action be compared to a suit at common law?

It was commenced by petition, and in all the stages through which it has been carried, no step has been taken in conformity to the common law; unless it be that the matter in controversy was submitted to a jury, and a bill of exceptions taken. Does this make it a common law proceeding? A jury is often called to try matters of fact in a chancery case, and in the admission of evidence, the rules of the common law are observed. But does this make the principal pro geeding an action at law? Surely not. And can the same mode of trial under the statute of Louisiana have that effect? The proceedings under this statute are as dissimilar to the common law process, as are the rules of chancery. The whole proceeding under the statute is in derogation of the common law. How then can it be called a common law proceeding? If it contain one feature of the common law, that does not change the character of the suit. The mode of redress is, under the special provisions of the statute, a remedy created by the law of the state. Can this procedure be called a suit at common law.

The words in the latter clause of the seventh article, " and no fact tried by a jury shall be otherwise re-examined in any court of the United States," refer to the first clause of the sentence, which limits the trial to " suits at common law." If this were not the true construction of the sentence, facts found by a jury in an issue directed by a court of chancery, would be conclusive on the chancellor. The verdict has never been so considered, and especially in the appellate courts of chancery. If the intervention of a jury in this case do not change its character, so as to make it a common law proceeding, then there is no difference in principle between this case and that of Armor. As the court in that cause looked into the testimony to ascertain the facts, so as to apply the principles of law, why not do the same in this. In that case the judgment of the circuit court was reversed . . a reversal in this case would render it proper to send down the cause for trial.

But the circuit court in this case refused to order the testimony to be taken down at the trial. This is undoubtedly error, if this court could examine the testimony, as it did in

Armor's case. Had that case been considered by the court as a suit at common law, it must have been dismissed, or the judgment affirmed. It was under the particular practice of the district court that this court considered itself authorised to look into the testimony which formed a part of the record in that cause, and by this procedure established the fact, that it was not strictly an action at common law. This appears to me to relieve the case under consideration from difficulty. For, if the suit of Armor was not a common law proceeding, neither is this suit; and consequently it is free from any constitutional objection in this court.

The objection made, that if congress by adopting the practice of the Louisiana courts may evade the provisions of the seventh amendment, and that they may abolish the trial by jury in the courts of the United States, by creating special remedies not known to the common law; is answered by saying, that congress have the power to do much, which it is not probable they will do. Have they not power to repeal the acts which confer jurisdiction on the courts of the United States, and which regulate their practice? This would not only take away the right of trial by jury in such courts, but all trials of every description. Is it at all probable that this power will be exercised? The answer must be in the negative; and so must the answer to an inquiry whether congress, by creating new remedies, will dispense with the trial by jury.

Is this article of the constitution to be construed to mean, by the words "suits at common law," all suits which are not properly called cases of equity, of admiralty and maritime jurisdiction? Under the practice of Louisiana, how are such suits to be distinguished? The form of action is the same in equity as at law; and if in all cases where a legal right could be prosecuted in other states, at the common law, they are to be denominated actions at law in Louisiana, the design of congress in adopting the Louisiana practice is defeated. The act of 1824 intended to relieve the parties to a suit in the district court in Louisiana from the forms of the common law, or the special regulations of

the judiciary act of 1789, because they were not adapted to the modes of proceeding in that court.

Suppose congress had specially provided, that in all trials before the district court of Louisiana, the testimony should be taken down, and that it should form a part of the record, so as to present the facts to the supreme court in the same manner as though they had been embodied in a prayer for special instructions to the jury, and brought up by bill of exceptions; might not this court determine the questions of law arising in the case? This, it appears to me, is neither more nor less than has been done by the act of 1824.

Are all the laws of the different states for the valuation of improvements by commissioners, where a recovery for land is had against a bona fine occupant who claimed title, unconstitutional? If suit be brought in the state courts, these laws are enforced as constitutional; but, if brought in the circuit court of the United States, they are unconstitutional. This would make the constitutionality of acts depend, not upon a construction of the constitution, but upon the jurisdiction where the action is brought. It would give redress in the state courts, which in the United States courts would be unconstitutional.

This would be the inevitable consequence, if the provision in the seventh article be restricted in its application to the courts of the United States, and be construed to embrace every species of action where a legal right is prosecuted. And, if to escape this consequence, the provision of the article be extended to embrace all cases which come within the above construction, without reference to the jurisdiction where the remedy is sought; then all laws extending the jurisdiction of justices of the peace above twenty dollars are unconstitutional; and also every arbitration system, which does not require a jury. An appeal from the judgment of a justice of the peace will not evade the constitutional objection; for the judgment is final, and the question involves the right of the justice to give judgment in the case, without the intervention of a jury.

Suppose congress, for the purpose of adjusting land titles in a district of country, should establish a special court,

[*Parsons vs. Bedford et al.*]

called commissioners, to examine and determine between the different claimants; would their proceedings be valid, under the seventh amendment of the constitution? This mode has been adopted by congress to settle claims to lands under the Louisiana treaty; and the acts of the commissioners have been confirmed. If such a proceeding was to be denominated the prosecution of a legal right, and consequently a suit at common law, because it was not a case in equity; the decision was void under the seventh article, and also any act of legislation confirming it.

From the foregoing considerations I am brought to the conclusion, that this case is not strictly a suit at common law; and that this court may, under the act of 1824, as it did in the case of Armor, look into the record, and, from the facts there set forth, determine the question of law: and as the court below refused to order the testimony to be taken down; I think the defendant has been deprived of a right secured to him by law; and that for this error, the judgment should be reversed, and the cause sent down for further proceedings; with instructions to the district court to order the testimony to be taken down at the trial.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Louisiana, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.