Calvin **TURNER**, and Sandra Juanita Turner, a minor by Calvin Turner, her father and next friend, and all others similarly situated, Plaintiffs,

v.

W. W. **FOUCHE**, Rastus Durham, and Elmo Bacon, Individually, and as representatives of the class of persons known as Grand Jurors of Taliaferro County, Georgia; Cranston Jones, W. A. Drinkard, Carl Chapman, H. E. Williams, Jr., and Mrs. Willie Mae Fambrough, Individually, and as Members of the Board of Education of Taliaferro County, Georgia; E. C. Moore, Guy Beazley, J. M. Taylor, L. T. Lunceford, and Clarence Griffith, Individually, and as Jury Commissioners of Taliaferro County, Georgia, Defendants.

Civ. A. No. 1357.

United States District Court
S. D. Georgia,
Augusta Division.

Aug. 5, 1968.

Howard Moore, Jr., and Peter Rinds-kopf, Atlanta, Ga., for plaintiffs.

Charles J. Bloch and Wilbur D. Owens, Jr., Macon, Ga., for defendants.

Alfred E. Evans, Asst. Atty. Gen., Atlanta, Ga., for the State of Georgia.

## OPINION AND ORDER

Before BELL, Circuit Judge, and SCARLETT and MORGAN, District Judges.

## PER CURIAM:

This case is quasi-sequential to Turner v. Goolsby, S.D. Ga., 1966, 255 F.Supp. 724, also a three-judge matter, and that case is referred to as background. See also United States v. Jefferson County Board of Education, 5 Cir., 380 F.2d 385, dissenting opinion, p. 416, fn. 6. These decisions point to the fact that the Taliaferro County school system is desegregated to the extent that there is only one grammar school and one high school in the entire system but there are no white children attending the public school system.[1] On the other hand, the school board members are all of the white race. This set of circumstances led to the instant class action brought by a Negro school child and her father on behalf of all Negro residents of Taliaferro County, Georgia, similarly situated. Another father and his five school children were added later as parties plaintiff.

The thrust of the complaint is that the Negroes have no voice in school management and affairs in that there are no Negroes on the school board. It is contended that Art. VIII, § V, ¶ I of the Constitution of the State of Georgia of 1945, Ga.Code Ann. § 2–6801, and Ga. Code Ann. §§ 32–902, 902.1, 903 and 905, all having to do with the election of county school boards by the grand jury, are unconstitutional under the equal protection and due process clauses of the Fourteenth Amendment and under the Thirteenth Amendment, both facially and as applied by reason of the systematic and long continued exclusion of Negroes and non-freeholders as members of the Board of Education of Taliaferro County, Georgia, and on the selecting grand juries. The same contention is made with respect to the Georgia laws regarding the appointment of and service as jury commissioners. Ga.Code Ann. § 59–101 and 106 (Ga.Laws 1967, p. 251, Vol. 1). Here again unconstitutionality in application is asserted on the bais of systematic exclusion of members of the Negro race from service as jury commissioner. Unconstitutionality is claimed also by reason of the alleged uncertainty, indefiniteness, and vagueness of the standards set forth in each of the statutes.[2]

1. According to the evidence in the instant case, in the 1966–67 school term there were 458 Negro children in the system. There were 72 white children attending a private school in grades one through ten. Cf. the recent Supreme Court decisions involving the desegregation of small rural school systems in Virginia and Arkansas, respectively. Green v. County School Board of New Kent County, Virginia, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education of Gould School District, 1968, 391 U.S. 443, 88 S.Ct. 1697, 20 L. Ed.2d 727.

2. Another allegation is that the school board has deprived Negro school children of text books, facilities, laboratories, recreation facilities, teaching programs, bus transportation and other benefits to the

Complainants seek an order declaring the aforesaid Georgia Constitutional provision and statutes unconstitutional on their face and as applied, and they also pray for ancillary money damages in the amount of $500,000 to compensate them for past deprivations and denials of federal rights. By amendment they pray for attorneys' fees.

Defendants named in the complaint are the members of the Board of Education of Taliaferro County and the jury commissioners of Taliaferro County. Additionally, three citizens of Taliaferro County were sued individually and in their capacity as grand jurors of Taliaferro County but they were dismissed by an order entered on January 30, 1968 granting a motion to dismiss for failure to state a claim against them upon which relief could be granted.

A three-judge District Court was convened under 28 U.S.C.A. §§ 2281 and 2284. The case was heard on January 23, 1968. The evidence indicated and the court announced then and now so finds that Negroes were being systematically excluded from the grand juries through token inclusion. Jurors were being selected by the jury commissioners from the voter registration lists as required by the Georgia statute, Ga. Code § 59–106, supra. The number of Negro and white voters in the county were substantially the same. It developed that there were 272 whites and 56 Negroes on the traverse jury list; 119 whites and only 11 Negroes on the grand jury list. It appeared also without contradiction that jury commissioners were all white and that the members of the Board of Education were all white. The grand jury situation was such that Negroes had little chance of appointment to the school board.

The hearing was adjourned and Charles J. Bloch, Esq., of counsel for the defendants, was directed by the court, pending the continued hearing, to fa-

miliarize the defendants with the provisions of law relating to the prohibition against systematically excluding Negroes from the jury system. The hearing was resumed on February 23, 1968 and Mr. Bloch reported to the court and introduced evidence to the effect that Honorable R. L. Stephens, Judge of the Superior Court of Taliaferro County, Georgia had, by order dated January 26, 1968, discharged the grand jury and required that the jury lists, both traverse and grand, be revised in light of the oral pronouncement by this court that the grand jury master list was illegally composed. The jury commissioners were directed by Judge Stephens to immediately recompose the jury lists. The following is from the report filed on behalf of the jury commissioners. This report was substantiated by the testimony of the chairman of the jury commissioners and stands uncontradicted.

"The Jury Commissioners met beginning on the Monday following the order, to wit, January 29, 1968. They had for their consideration the list of persons who were registered to vote in the last general election. That list contained a total of 2,152 names. We are advised that the Jury Commissioners considered each and every name in that list. When the Commissioners did not have any information with respect to a particular individual, they asked other people in the community about him or her. In particular, when they did not know about persons of the Negro race, they asked Negro people about them. In considering each and every name they eliminated the following numbers of names without regard to race for the following reasons:

| | |
|---|---|
| Poor Health and over-age | 374 |
| Under 21 years of age | 79 |
| Dead | 93 |

Persons who maintained Taliaferro County as a permanent

---

extent that they are ill equipped to advance in the modern world and are mere peons in the hands of the white race.

This allegation fails utterly for want of proof and will be eliminated from the case at this point.

place of residence but were most of the time away from the county 514

Persons who requested to be eliminated from consideration 48

Persons about whom information could not be obtained 225

Persons of both the white and Negro race who were rejected by the Jury Commissioners as not conforming to the statutory qualifications for juries either because of their being unintelligent or because of their not being upright citizens 178

Names on voters lists more than once 33

"This left a total of 608 names. Since 608 names are more than the Jury Commissioners deemed to be needed in the traverse jury box, they arranged these 608 names in alphabetical order, and took every other name on the list alternately and placed those names on the traverse jury list. This left a total of 304 names, and only then did the Commissioners look to see how many of these 304 names were those of Negroes and how many were those of whites. They determined that 113 were Negroes and 191 were white.

"Their next task was to select not more than two-fifths of this traverse jury list for the grand jury list. They decided that the fairest system would be to draw names by lot. They drew a total of 121 names by lot and put those names on the grand jury list. Having done that, they looked to see how many were of the Negro race and how many of the white race. They ascertained that 44 were the names of Negroes and 77 were names of whites."

It developed that the jury commissioners were assisted by two Negro residents of the county in making the jury revision. The chairman of jury commissioners agreed that a Negro would be appointed as clerk or secretary to the commissioners until such time as a Negro or Negroes could be appointed to membership on the commission in order that the Negroes of the county, in the meantime, would have some representation in the operation of the jury system.

The court requested the chairman of the jury commissioners to designate by race those persons who were on the voter registration list and who were eliminated from jury service. That was done subsequent to the adjourned hearing with the following result: 71 of the under 21 group were Negroes; 191 of those in poor health were Negroes; 263 of the 533 who were away from Taliaferro County were Negroes; 171 of the 178 disqualified were Negroes; while only 3 of the 43 persons who requested to be relieved from jury duty were of the Negro race. The other categories were unknown as to race.

After the new grand and traverse jury lists had been completed and after all the names had been put in the respective jury boxes, a new grand jury was drawn by Judge Stephens from the jury box by lot. A total of 32 grand jurors were drawn: 9 Negroes and 23 whites. The grand jury actually serving consisted of 23 grand jurors, 17 of whom were whites and 6 Negroes, the others having been excused by the court.

That grand jury convened on Friday, February 16, for the purpose of considering the regular business of the court and for the purpose of confirming or rejecting persons who had been selected by the Board of Education of Taliaferro County, Georgia, to succeed Horace E. Williams, Jr. for a term to expire August 25, 1968, Mr. Williams having resigned, and to succeed Albert Drinkard, deceased, for a term to expire August 22, 1969. Casper Evans, Sr., a Negro, had been chosen by the Board of Education to serve until the next meeting of the grand jury, and Moore Pittman, who is of the white race, had been chosen by the Board of Education to succeed Albert Drinkard, deceased, for the term expiring August 23, 1969. These choices by the Board of Education were confirmed by the grand jury.

■ The court finds and concludes that the grand jury list, as revised, is not unconstitutional or illegal. The court finds and concludes that the constitutional provision and the statutes in question are not unconstitutional on their face or as applied. There is nothing in the constitutional provision or in the statutes which contemplates or permits the resulting systematic exclusion from the grand juries. The standards are not inadequate. The facts showed systematic exclusion in the administration of the grand jury system prior to the revision but this resulted from the administration of the system and not from the constitutional provision and statutes under attack. The court also concludes that the provision requiring that members of the school board be freeholders has not been shown to be an unconstitutional requirement. There was no evidence to indicate that such a qualification resulted in an invidious discrimination against any particular segment of the community, based on race or otherwise.

■ There is thus no merit in the three-judge District Court questions presented. There remain, however, two single judge questions. One is that of the systematic exclusion of Negroes from the grand juries. This is the question that stems from the manner in which the grand jury system was administered. The court in its discretion will retain jurisdiction over this single judge question and grant such relief as indicated. Turner v. Goolsby, supra; and cf. United States v. Georgia Public Service Commission, 1962, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317, to the effect that a three-judge District Court may dispose of a case on a ground that would not have justified calling a three-judge court. The jury commissioners will be enjoined from systematically excluding Negroes from the grand jury system in Taliaferro County. Cf. Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13.

■ The other single judge question concerns the prayer for damages. See 42 U.S.C.A. § 1983 on the question of damages. Defendants claim a Seventh Amendment right to jury trial if the question is to be considered and we hold that there is merit in this contention. Dairy Queen, Inc. v. Wood, 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44. In view of the cumbersomeness which would be involved in a three-judge District Court jury trial and that such is not contemplated by the three-judge District Court statute, 28 U.S.C.A. § 2284, we decline, in our discretion, to entertain the question of ancillary damages.

■ All other prayers for relief are denied including the prayer for attorneys fees. Costs will be taxed against the defendant school board members and jury commissioners and the costs shall be allowed to include the expenses of complainants in traveling to Brunswick, Georgia for the adjourned hearing to the extent that may be possible under the costs statutes. The school board members are assessed on the basis that their conduct, in substantial measure, precipitated the suit.

Counsel for complainants may present an order enjoining the jury commissioners as aforesaid.