James Harvey **JOHNSON**, Plaintiff,

v.

Warden Noah **ALLDREDGE**, Corrections
Officer Cronrath, Defendants.

Civ. A. No. 71–337.

United States District Court,
M. D. Pennsylvania.

Nov. 7, 1972.

James Harvey Johnson, pro se.

Harry A. Nagle, Lewisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

This case presents a claim by James Harvey Johnson, an inmate at the Lewisburg federal penitentiary, that he is entitled to an award of damages in the sum of $35,000 because Defendant Cronrath, a guard at the penitentiary, allegedly seized and willfully destroyed certain legal documents and research materials belonging to Plaintiff. Plaintiff asserts that Defendant Alldredge, warden of the penitentiary at the time of the alleged seizure and destruction, failed to take action on Plaintiff's complaint concerning this matter. Presently before the Court are Defendants' motions to dismiss for lack of jurisdiction and for summary judgment, and Plaintiff's motions for summary judgment and for a jury trial.

Contrary to Defendants' assertion, this Court has jurisdiction of this action. Plaintiff claims that the defendant federal officials unreasonably infringed upon his access to the courts, a liberty which enjoys the protection of the Due Process Clause of the Fifth and Fourteenth Amendments. *See, e. g.,* Burns v. Swenson, 430 F.2d 771, 776 (8th Cir. 1970); Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); Gittlemacker v. Prasse, 428 F.2d 1, 7 (3d Cir. 1970); Stiltner v. Rhay, 322 F.2d 314, 316 (9th Cir. 1963). In Bethea v. Reid, 445 F.2d 1163 (3d Cir. 1971), it was held that a complaint which alleged violations by federal officials of Fifth Amendment rights stated a federal claim upon which

relief could be granted. See also Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971) (seminal case; Fourth Amendment rights at issue); United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3d Cir. 1972) (dictum to the effect that the holding in *Bivens* extends to violation of any constitutional right). Since the amount in controversy here is greater than $10,000, the jurisdictional requirements of the federal question statute, 28 U.S.C. § 1331(a), are satisfied.

Plaintiff Johnson's view of the facts of this case, as stated in his complaint and an affidavit, is summarized in this paragraph. He gave the legal documents and research materials in question to a fellow inmate, one Richard Hendrickson, in order to obtain Hendrickson's assistance in preparing a brief in support of Plaintiff's appeal from his conviction and one in support of a habeas corpus petition he had filed. When Hendrickson was placed in segregation on February 5, 1971, Defendant Cronrath seized Plaintiff's legal matter and destroyed it. Defendant Cronrath admitted to Plaintiff, in the presence of other inmates, that he did so. Upon discovering this loss, Johnson complained to Warden Alldredge but obtained no satisfaction.

Cronrath in his affidavit in support of his summary judgment motion admits that he routinely secured all property in Hendrickson's cell when Hendrickson was placed in segregation, and that he placed this property, which included Hendrickson's own legal material "as well as legal writings that could not be identified as being his [Hendrickson's] property,"[1] in a prison closet for storage. He states that he does not remember seeing any legal papers belonging to Plaintiff, but that if legal papers belonging to Plaintiff were among Hendrickson's papers, "they would have been disposed of as contraband items by other members of the custodial staff of the institution."[2] The relevant policy state-

---

1. Affidavit of Defendant Cronrath dated June 2, 1972 at p. 2.

2. Ibid.

ment in effect at the Lewisburg federal penitentiary in February, 1971, provided that:

> "Inmate legal material is considered personal property and is contraband if found in possession of another inmate without authorization. If there are valid reasons for transfer of such material from the owner to another inmate, application should be made to the Caseworker or Liaison Officer." (Addendum to NE 2001.1, ¶ 3E., June 19, 1969)

No party to this case has claimed that the permission required by this policy statement was or was not obtained by Johnson prior to the transfer of his materials to Hendrickson.

 Prison officials may not constitutionally prohibit a prisoner from assisting other prisoners in the preparation of petitions for post-conviction relief if other legal aid is lacking. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). However, prison regulations which reasonably limit the times, places and manner in which prisoners may prepare legal papers do not violate their constitutional rights. Gittlemacker v. Prasse, 428 F.2d 1, 7 ·(3d Cir. 1970). The prison policy statement quoted above is not on its face an unreasonable regulation of the preparation of legal papers. But it is possible that it was unreasonably applied here if Plaintiff requested the requisite permission and it was arbitrarily denied him or was granted, but ignored, when Hendrickson's property was seized. Furthermore, the policy statement says nothing about the destruction of the legal materials seized as contraband. In my view, such destruction would constitute a violation of the prisoner's constitutional rights of liberty of access to the courts unless justified by the need to maintain discipline in the prison. Such

justification is not apparent from the meagre documents now before this Court. If destruction is not justified, there are questions about the culpability of the two particular defendants in this case which are also unresolved by the affidavits before the Court. Were Johnson's legal papers destroyed? If so, was it Defendant Cronrath or some other guard who destroyed them? What knowledge did the warden have that destruction of confiscated legal materials was a common practice, if it was?[3] Because these questions of fact remain, summary judgment for any party would be improper. Fed.R.Civ.P. 56.

 It is Defendants' position that the issues just discussed need not be reached because, Defendants assert, they enjoy immunity from damage suits for acts which are within the outer perimeter of their authority and duties. They rely on the recent case of Boulware v. Parker, 457 F.2d 450 (3d Cir. 1972). In that case, it was held that the defendant warden of the Lewisburg federal penitentiary was immune from suit under the Federal Tort Claims Act because his conduct there was "within the outer perimeter of his authority and duties." This latter phrase has its origin in the case of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), upon which the Court in *Boulware* apparently relied. In *Barr*, a libel suit was instituted against the Acting Director of the Office of Rent Stabilization by former employees of that Office. The Court held that the Acting Director could maintain a defense of absolute privilege in the circumstances of that case. "The question is a close one, but we cannot say that it was not an *appropriate exercise of the discretion* with which an executive officer of petitioner's rank is necessarily clothed to publish the press release here at issue in the circumstances disclosed by this record." Barr, 360 U.

---

3. Such knowledge might be a basis for holding the warden vicariously liable. See Mills v. Larson, 56 F.Supp. 63 (W.D.Pa. Aug. 25, 1972) (11 Cr.L. 2538); Sanberg v. Daley, 306 F.Supp. 277 (N.D.

Ill.1969); Carter v. Carlson, 144 U.S. App.D.C. 388, 447 F.2d 358, n. 39 at 370 (1971). See also Howell v. Cataldi, 464 F.2d 272 (3d Cir. June 26, 1972).

S. 564, at 574, 79 S.Ct. 1335, at 1341 (emphasis supplied). As discussed above in relation to the summary judgment motions before the Court, the present record is inconclusive as to the particular facts of this case and their general context. Since on the basis of Plaintiff's complaint and affidavit it could reasonably be concluded that Defendants' acts were not an "appropriate exercise of the discretion" which they have as prison officials, their claim of immunity cannot be sustained at this time. The present state of the record also precludes granting summary judgment based on the defense of Defendants' good faith performance of their duties.[4]

Remaining for resolution at the present time is the issue of whether Plaintiff has a right to have his claim for damages tried by a jury. In my view, the Seventh Amendment guarantees him this right. It provides that "[i]n suits at common law . . . the right of trial by jury shall be preserved." This language has been interpreted to mean that litigants have a right to jury trial—

> " 'not merely [in] suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered . . . . In a just sense, the amendment then may well be construed to embrace all suits, which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights.' Parsons v. Bedford [Breedlove and Robeson, 28 U.S. 433], 3 Pet. 433, 447 [7 L.Ed. 732] (1830)." Ross

v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970). Plaintiff's claim is a legal one because it is one for damages, because its closest common-law analogue is a tort action for trespass,[5] and because a jury is fully capable of comprehending the issues such a claim presents. See Ross v. Bernhard, 396 U.S. 531, n. 10 at 538; n. 1 at 543, 90 S.Ct. 733 (Stewart, J., dissenting). Presumably on the basis of a similar, although unarticulated, rationale, several courts have held that there is a right to a jury trial in an action for damages under the Civil Rights Act. Henderson v. Goeke, 329 F.Supp. 1160, n. 5 at 1162 (E.D.Pa.1971); Wilson v. Prasse, 325 F.Supp. 9, 14 (W.D.Pa.1971); Turner v. Fouche, 290 F.Supp. 648, 652 (S.D.Ga. 1968).

An Order in accordance with this Opinion denying Defendants' motions and Plaintiff's motion for summary judgment and setting the case for trial by jury will be entered.

4. On this defense, see e. g., Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 456 F.2d 1339, 1347–1348 (2d Cir. 1972).

5. Civil Rights Actions are read against a background of tort liability. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).