## SUPREME COURT.

WILLARD GOTCHEUS agt. EDWARD S. MATHESON and JUSTICE L. JOHNSON, Impleaded with RICHARD M. BARGHARDT.

The act of congress approved March 3, 1865, (section 21,) providing additional penalties for the crime of *desertion* from the military and naval service of the United States, including the forfeiture of citizenship, &c., is *not unconstitutional.* It is not an *ex post facto law;* neither is it a *bill of attainder,* for the reason that it contemplates a trial by a court marshal to enforce such penalties.

Where a person, who claims to be a citizen of this state, offers to vote at an election duly held in said state, but is challenged on the ground that he has forfeited his citizenship by reason of desertion, and the force of the above mentioned act, the inspectors of election cannot refuse to receive his vote because they are satisfied from his examination on oath, that he has thus forfeited his citizenship—they must have legal evidence of his conviction as a deserter before a court marshal, or some other competent court, in order to warrant them in rejecting his vote.

*Broome Special Term, and Circuit, June,* 1870.
DEMURRER to second defense in the answer.

HUNT & GREEN *counsel for plaintiff.*
L. SEYMOUR *counsel for defendant.*

MURRAY, J.—The defendants were inspectors of election in district No. 2 of the town of Triangle in Broome county. At the general election in 1868, the plaintiff offered his vote to them as inspectors. They excluded it. He brings this action against them for damages, and alleges that they illegally excluded it. The defendants, Matheson, and Johnson, as a several defense in their answer, allege on information and belief that the plaintiff prior to the 3d day of March, 1865, had been in the military service of the United

States, and had deserted therefrom, and did not return to said service, or report himself to a provost marshal, within sixty days after the proclamation mentioned in section 21 of the act of congress, entitled "an act to amend the several acts heretofore passed, to provide for the enrolling and calling out of the national forces and for other purposes" approved March 3d, 1865. That when the plaintiff offered his vote at said election, he was duly challenged on the ground that he had deserted from the military service of the United States, and had not returned thereto pursuant to the requirements of the said act. That the defendants thereupon as in duty bound, and by law required, administered to the plaintiff the oath by law provided for such cases, and the plaintiff then and there refused to answer any questions that might be put to him in relation to the ground on which such challenge had been made, except that he stated that he had been in such military service, and the defendants then and there refused to receive his said ballots, or to permit him to vote.

The plaintiff demurs to this defense on the ground that the matters alleged do not constitute a defense. By the demurrer, the plaintiff admits the truth of the matters therein stated. The question is thus raised assuming all the matters therein stated to be true; "Were the defendants required by law to allow the plaintiff to vote?"

By the statement in said defense, it appears that the plaintiff's vote was challenged on the ground of his being a deserter. No other ground is stated. I am required, therefore, to assume, that in all other respects he had the undisputed qualifications of a legal voter.

Section 21 of the act of congress, approved March 3d, 1865, referred to in the said defense, provides that in addition to the other lawful penalties of the crime of desertion from the military or naval service, " all persons who have deserted the military or naval service of the United States, who shall not return to said service, or report themselves to a provost

marshal, within sixty days after the proclamation herein· after mentioned, shall be deemed and taken to have volun· tarily relinquished and forfeited their rights of citizenship, and their rights to become citizens, and such deserters shall be forever incapable of holding any office of trust or profit under the United States, or exercising any rights of citizens thereof. And all persons who shall hereafter desert the military service, and all persons who being duly enrolled shall depart the jurisdiction of the district in which they are enrolled or go beyond the limits of the United States, with intent to avoid any draft into the military or naval service duly ordered shall be liable to the penalties of this section. And the president is hereby authorized and required forthwith on the passage of this act to issue his proclamation, setting forth the provisions of this section, in which proclamation the president is required to notify all deserters returning within sixty days as aforesaid, that they shall be pardoned on condition of returning to their regiments and companies, or to such other organizations as they may be assigned to, until they shall have served for a period of time equal to their original term of enlistment."

The president immediately issued his proclamation in pursuance of this section. The plaintiff by his demurrer admits that prior to the passage of this act he had been in the military service of the United States, and had deserted therefrom, and had not returned or reported himself as required by the said act and proclamation. There is no allegation in the defense that the plaintiff had been tried by a court marshal, and convicted of being a deserter, and a failure to return. That fact, therefore, is not admitted.

By the constitution of this state, a citizen of the United States only, can vote at a general election. If, therefore, this act had the effect of depriving the plaintiff of his citizenship, and the inspectors had the proper evidence before them, they were justified in refusing his vote, and the defense is available to the defendants. But it is insisted on

the part of the plaintiff, that this act is in violation of the constitution of the United States, and void without legal effect. It is claimed to be in violation in two respects. First, that it is an *ex post facto law*, second that it is *a bill of attainder.*

It has been repeatedly held that to warrant the courts in setting aside a law as unconstitutional, the case must be so clear that no reasonable doubt can be said to exist. *(Fletcher* agt. *Peck,* 6 *Cranch.* 128; *U. S. Bank* agt. *Wheat,* 10 *Wheat.* 53; *Parsons* agt. *Bedford,* 3 *Peters,* 433, 438; *Ogden* agt. *Sanders,* 10 *Wheat.,* 294; *Sedgewick on Stat. and Com. Law* 592.)

With this rule in view, I proceed to consider the question of the constitutionality of this act.

Subdivision 3 of section 9 of article I. of the constitution of the United States, provides that no bill of attainder or *ex post facto* law shall be passed. If this act comes under either of these classes, it must be held to be void, and no protection to the defendants.

At the time this act was pased, the government was engaged in a war. Subdivision 11 of section 8 of the said article provides that, congress shall have power to raise and support armies. Subdivision 13 of the same section provides that congress shall have power to make rules for the government, and regulation of the land and naval forces.

Under these provisions, congress clearly would have the authority to pass said act, unless it comes under the class of cases prohibited by the said subdivision 3 of section 9, aforesaid.

This act must be construed by the light of surrounding circumstances. At that time the war had been waged for four years, with varied success. The army which was very large, composed mainly of volunteers, had been at different times greatly depleted, and as often repleted. From this volunteer force there were very many deserters. They were scattered, and skulking about in all parts of the

country, and many in Canada. They had subjected them-
selves to the penalties of desertion. Congress then passed
this act, having two objects in view. First to replenish
the army. Second the humane purpose of relieving these
persons from the penalties to which they had subjected
themselves. By it, they were assured of pardon for the past
offense of desertion on returning to duty within sixty days
after the proclamation was made as required in the act.
On failure to return to duty and accept the proffered mercy,
they were to be deemed and taken to have voluntarily re-
linquished and forfeited their rights of citizenship, and their
rights to become citizens, and be incapable of holding office
under the United States. This was to be in addition for
the other penalties prescribed for desertion. If this ad-
ditional penalty was imposed as an additional punishment
for the past offense of desertion, this would be an *ex post
facto law*. An *ex post facto* law is one that has relation to
a past act, and punishes as criminal the act that was inno-
cent at the time it was done—or adds to the punishment
of an act that was criminal when done—or increases the
malignity of the crime, or so retrenches the rules of evi-
dence as to make conviction more easy. *(People agt.
Hartung, 22 N. Y., 95; People agt. Stephens, 25 N. Y.,
406; 3 Dallas, 386.)*

Such laws relate only to criminal and penal proceedings
which impose punishment and forfeitures. This act is penal
in its character and provides for a forfeiture.

Desertion before was criminal under the military regula-
tions of the government, but before this act was passed,
absolute forfeiture of citizenship, and right to hold office
was not imposed as a punishment. Therefore, if this was
an additional punishment imposed on the original past crime
of desertion, it would be *ex post facto*. I do not so under-
stand it. Under this act, this new forfeiture is self imposed
and is not on account of the past act of desertion, but on ac-
count of the renewed and continued breach of duty as

citizens and soldiers in refusing to return to the service they had deserted under the assurance of pardon. The act provides that in case of a failure to return, they shall be deemed, &c.—thus imposing this forfeiture upon the delinquency of not returning to duty. The not returning is made a new act of desertion, punishable by this forfeiture. It is a call upon them to return and sustain the government. They refuse. Pardon for past offenses is offered as an inducement, and to remove all obstacles. Yet, they despise the proffered mercy, and still refuse. The government is in need of men. The ranks of its army are thin. It calls upon these deserters to return. They refuse. This under this act, constitutes new acts of desertion, for which this new penalty is imposed. When they, thus refused, they knew of the offer. They knew the consequences that would follow a refusal. They had sixty days in which to perform this duty. It cannot, therefore, be said to be an *ex post facto* law.

Is it a bill of attainder? Bills of attainder are such special legislation as inflict capital punishment upon persons supposed to be guilty of high offences, such as treason and felony, without any conviction in the ordinary course of judicial proceedings. (3 *Storys' Com. on Const.*, 209; *Smiths Com. on St. and Const. Law*, 365, 366.)

Legislation in like manner inflicting pains and penalties are included in the general designation of bills of attainder. (*Smiths Com. on St. and Const. Law*, 366; *Sedgewick on Const. and St. Law*, 598; *Cummings* agt. *The State of Missouri*, 4 *Wal.*, 277; *Fletcher* agt. *Peck.*, 6 *Cranch.*, 138.) In such cases, legislative bodies assume to exercise judicial powers, and perform the duties of judges in addition to their legitimate functions. They determine the guilt of the parties without any of the safeguards of a formal judicial trial. The sufficiency of evidence is determined without any regard to rules. The punishment is fixed according to the notions of the legislative body, without hearing on the

·part of the accused.   Such legislation is prohibited by the federal constitution.

The act in question imposes a forfeiture of citizenship, and right to hold office under the United States as a penalty for a deserter failing to return to duty, according to the terms of the act.   Citizership of the United States is an important right, and the privileges conferred by it are important privileges, dearly prized by the American people. ·An act that provides for a forfeiture thereof imposes a penalty, and comes within the provisions of the constitution in regard to bills of attainder.   ( *Cummings* agt. *The State of Missouri*, 4 *Wal.*, 277 ; *ex parte Garland*, 4 *Wal.*, ·333 ; *Green* agt. *Shumway*, 39 *N. Y.*, 418.)

Congress has entire control of the question of citizenship. It comes within its constitutional powers.   It can make ·such rules and regulations in regard thereto, as in its judgment are right and proper.   Subdivision 4 of section 8 of article I. of the constitution provides that, congress shall have power to establish a uniform rule of naturalization. By this, congress is authorized to pass laws for the naturalization of aliens, which is to be the rule in every state in the union.   Every person born within the United States is a citizen thereof.   Congress, having power to make rules for the government, and regulation of the land and naval forces of the United States, has the power to impose penalties and forfeitures as a punishment for a breach of those rules and regulations.   One of those penalties or forfeitures may be a forfeitnre of citizenship and right to hold office under the United States—no matter whether that citizenship was secured by naturalization under the laws of congress, or by being a native born.   *(Barker* agt. *The People*, 20 *Johns.*, 458.)

This act cannot be said to be passed with a direct reference to voting in any state.   Where, as in this state the constitution and laws provided that, no one shall vote unless he be a citizen of the United States, this act when the pen-

alty is enforced, might have the effect of excluding a voter. But the qualification of the voters is entirely within the control of each state. Congress has no power to prescribe the qualification of voters in the states. The people of this state, by an amendment of the constitution could allow a person laboring under the disability created by this act to vote. (*Gen. Blair* agt. *Ridgley and others,* 41 *Mo.*) It is the exclusive province of the state to regulate the qualification of its voters. It is the exclusive province of congress to regulate the question of citizenship of the United States. This, however, has no reference to any questions arising under the recent amendments of the federal constitution. The act in question is not obnoxious to the objection that it attempts to regulate the qualifications of voters in this state.

If it was the intention of congress, by this act without a trial or the adjudication of any court to deprive this class of persons of citizenship, it would come under that class of legislation designated bills of attainder. I think, there was no such intention.

It can hardly be claimed that the trial before the inspectors of election holding office under our state laws, when the person offers his vote, could have been contemplated as a trial under this act by the framers thereof. Their duty is to ascertain who are citizens; not to adjudge, declare and enforce forfeitures of citizenship. It is their duty to ascertain who are and who are not legal voters, and reject the votes of those that are illegal, and receive the votes of those that are legal. In this case, the plaintiff offered his vote and the inspectors were satisfied from the evidence given, that he was embraced in this class of persons described in said act as deserters, who had failed to return. They honestly belived the act itself was sufficient to forfeit citizenship, and therefore, excluded his vote, whereas they should have gone further and ascertained if the plaintiff had been convicted in any court of being a deserter,

Gotcheus agt. Matheson.

and of failing to return. If he had been so convicted, his vote should have been excluded, if not it should have been received. This act, doubtless contemplated a trial and conviction before a court martial, and thus to enforce the forfeiture. (*Huber* agt. *Riely and others*, 53 *Penn.*, 112.) That is the court that tries all military offenses. This penalty was to be in addition to the other penalties for desertion, to be enforced in like manner. But this penalty was absolute. The court had no discretion. On conviction it must be imposed. But conviction must always precede the punishment. The accused must be proved guilty before conviction. He must be heard and have an opportunity to defend. He must be confronted by the witnesses against him. He might be able to show an excuse for leaving the army. He might be able to show an excuse for not returning. He has the right, and should have the opportunity to present all such matters before a court martial, that it might pass upon their merits, and determine the guilt, or innocence of the accused. The inspectors of election are not in a position to adjudicate these matters. They are not authorized to do so. They can determine who are citizens, but they cannot adjudge and declare as an original adjudication that the plaintiff's citizenship has been forfeited by the commission of an offense. They could receive as evidence such an adjudication made by an other court, and give effect to its provisions by rejecting the vote and thus depriving the person of the privilege of citizenship, but further than this, I do not see as they could go.

I am, therefore, led to the conclusion that the act in question is constitutional; that it is not an *ex post facto* law, neither is it a bill of attainder, for the reason it contemplates a trial by a court martial to enforce this penalty together with the other penalties for desertion.

But there was no evidence of conviction produced before the inspectors. For that reason, there was no evidence of

forfeiture of citizenship, and the inspectors had no right to exclude the vote.

The demurrer should be sustained, and defendants have leave to amend their defense on payment of the costs of demurrer within twenty days, if they be so advised.