W an am aker, J.,
dissenting. Fouts, a conductor of a B. & O. freight train, brought suit against the railroad company for the negligent moving of his train contrary to and in violation of his own signals, whereby he was thrown from the top of a box car and lost his leg.
The case was tried to a jury before Honorable George F. Robinson, judge of the common pleas court of Mahoning county. The jury found the railroad company was proven negligent by a preponderance of the evidence and returned a verdict in favor of Fouts for $7,500. A motion for a new trial was promptly made by the railroad company, one of the grounds for which was that the verdict was contrary to the weight of the evidence. Judge Robinson, one of the ablest and oldest (in point of service) judges of the state, had seen the witnesses face to face and considered their credibility as only a trial judge can. He saw the signals demonstrated before the jury, both as required by the rules of the company and as they were given on the day of the injury. With all these witnesses before him and these unusual opportunities for weighing the testimony Judge Robinson sustained the .verdict and entered judgment thereon.
The railroad company prosecuted error to the circuit court. All three judges affirmed the court of common pleas. Then the railroad company prosecuted error to the supreme court, and this court now reverses the finding of the jury of twelve, the trial judge and the three circuit judges and holds “This was not negligence on the part of the engineer;” that is, the railroad company.
*318 The judgment' of the four supreme judges, having greatly inferior opportunity to understand, apply and weigh the evidence, not being able to judge of the credibility of the witnesses because of never having seen or known them, now reverses the action of both lower courts and the jury, and then enters final judgment for the railroad company.
This is a most drastic doctrine. ' Indeed it is well nigh revolutionary.
Since when has the supreme court acquired the right to say in any given concrete case, what is negligence and what is not negligence?
Questions of negligence are questions of fact for the jury and not questions of law for the court; at least, this court has often so decided, and indeed within a six-month so declared in the case of Gibbs v. The Village of Girard, ante, 34, the fourth paragraph of the syllabus reading as follows: “What is ordinary care, what is reasonable safety, and the like, are, in the first instance, usually questions for the determination of the jury under proper instructions by the court, appropriate to the particular circumstances of each case and the issues thereof.”
Now we have a rule in this court, with which all lawyers at least are familiar, that we will not weigh the evidence. Two courts below having passed upon it their decision is ■ final, and, therefore, the only way there can be a review of a question of fact below is to hold that there was absolutely no evidence on some one or inore essential elements of the plaintiff’s case. ' But it will be *319 noticed that that is not the finding or holding of the majority in the syllabus of this case. The language of the syllabus is: “This was not negligence on the part of the engineer.”
This court does not and could not hold that there is no evidence of negligence to be submitted to the jury, but it invades the province and duty of the jury by weighing and considering the whole evidence and holding that it does not show negligence against the railroad company. This usurpation by this court of the functions and rights of the jury and the parties to the suit is contrary to settled rules and practice of this court, and contrary to the provisions of both state and federal constitutions.
It is unfortunate that the statement of fact appearing in the syllabus is not the fair statement to which the plaintiff is entitled, for it is quite clear that either in determining whether or not there is any evidence, or whether there is sufficient evidence to support a verdict, the plaintiff is entitled to the most favorable construction as to the facts and as to the inferences drawn from these facts; for the jury evidently believed the plaintiff, whom they had before them, and disbelieved the defendant. The difficulty with the statement appearing in the syllabus is that the viewpoint of the court is the viewpoint of the railroad company and of Barnes, its engineer.
Now, the verdict of the jury, together with the judgment of the trial judge, involves a disbelief of the railroad company’s contentions through Barnes, its engineer, because the railroad com *320 pany’s own case was practically made out of Barnes, and if the jury believed Barnes it is reasonable to suppose that it would have found for the railroad company. The jury had all these witnesses before them, observed their tone, their manner, their general bearing in giving their testimony, their frankness or hesitation in testifying, and from all these things were able to give each witness the credibility to which he was entitled-, which facts as affecting credibility could not be put in the record at all and which certainly gave the jury advantage over this court in weighing that evidence.
This court is now wholly believing the engineer’s testimony, whom they never saw and do not know. This engineer was certainly as much interested in the result of this-suit as was Fouts, because the negligence of the railroad company was practically the negligence of the engineer. Of what avail, pray, are juries anyhow, if they are not to weigh the facts in the light of the credibility of the witnesses who testify? Every lawyer and every judge, and indeed every one familiar with courts, know to what extent perjury is practiced in our courts of to-day. In a large number of cases courts and juries in effect do find that certain witnesses really commit perjury and, therefore, wholly disregard their evidence. They come to this conclusion from their appearance and manner and bearing when on the witness stand, but a reviewing court, that cannot see and hear the witnesses, is not in a situation to so weigh the evidence and fix the credibility of the witness'.
*321 I have already indicated that the statement of fact appearing in the syllabus of this case is not a fair statement; by that I mean it is not fair to the plaintiff and is more than fair to the railroad company. What are the facts as testified to by Fouts and his witnesses? for Fouts is entitled to the most favorable aspect in which this testimony could be considered so far as this judgment of the supreme court is concerned.
The train was made up of ten to twelve box cars standing still on a straight east-and-west track, with the engine headed east. The engineer was on the right or south side of his cab. The conductor, Fouts, had climbed on top of the most westerly car, and testifies that he went to the south edge of the car, leaned out as far as he could and gave the usual “back-up” signal, and demonstrated before the jury how he gave it. Fouts further testified that that was “good railroading,” and two of the defendant’s witnesses, Daugherty and Wolfsberger, in answer to a hypothetical question, not objected to by the able and vigilant counsel of the railroad company, answered that that was “good railroading;” that is, giving the signal where Fouts gave it and in the way he gave it.
Now, how can it be said that the conduct of Fouts, in relation to the place he gave the signal and the manner in which he gave the signal, was “good railroading” in the judgment of the company’s own experts, and at the same, time a violation of a “rule of service” that required the conductor to put himself in plain view of the engineer when giving the signal, as stated by this court in the syllabus of this case? I prefer the judgment *322 of the plaintiff himself, corroborated as it is by two practical railroad men who were witnesses for the railroad company, as to what is “good railroading,” rather than the judgment of this court. How can Fouts’ conduct on a box car in giving a signal be conformable to “good railroading” and at the same time Fouts be guilty of contributory negligence in that behalf, as the majority opinion contends ?
Much is said in the majority opinion about “arc of circle,” “plane of Barnes’ vision,” “variation of the color and contour of the image,” “successive percepts of the changing of hand and arm backward -in a circle would merge with one composite mental picture or concept,” “ocular image,” “art of introspection,” and the like, but to my mind the simple, uncontradicted evidence that Fouts was on the south edge of the car, leaning out as far as he could to the south and then with his right arm gave the usual “back-up” signal required by the rules of the company, that not only Fouts but two of the defendant’s witnesses say that this was “good railroading,” and that thereupon, without any further signal, the engineer moved the train forward contrary to Fouts’ “back-up” signal-such evidence was evidently more convincing to the men who composed the jury and to the trial judge, who heard and saw the witnesses, than any far-fetched, over-refined, technical treatise on the laws of light, vision and mental suggestion presented in the majority opinion..
If. now, the “back-up” signal was given at a proper place and in a proper way, why .was the *323 train moved the wrong way? Because. Barnes did not obey or follow the signal. Why not? Either because of a temporary forgetfulness that happens to all men, even to train dispatchers who have the most important duties to perform, or because he did not get his head out of his cab window far enough to see the whole signal' as he could and should have done, since three witnesses testified that this was “good railroading” on Fouts’ part. If this was “good railroading” on Fouts’ part then Barnes was certainly the negligent party in not putting himself where he could see the signal clearly, or else waiting until he did get a clear signal before he moved the train, as the rule of the company required.
Barnes took the risk of moving the train, according to his own testimony, knowing that in all probability that the man whom he saw on top of the car, if he had prepared himself for a backward movement and the train went forward, would in all probability be injured by being thrown from the car. But Barnes moved the train forward when there was no occasion for its forward movement, nor no signal for its forward movement— at least the jury so found.
Now, if Barnes saw only a small fractional part of Fouts’ signal and interpreted it as a “go-forward” signal, as he claims, Barnes knew or should have known that such signal, appearing to him as a “go-forward” signal (as he says), might also be the upper or fractional part of the “back-up” signal, which latter was the signal he was looking for. His plain duty in such a situation was to wait until the signal was clear and definite; until *324 he "knew whether what he saw was the whole of the “go-forward” signal or the fractional part of the “back-up” signal. He knew or should have known that to move the train the wrong way was to imperil'the life of the man whom he saw on the box car. ■
If Barnes had put his head and upper body out of' the .cab window, as good railroading would require when a signal is in doubt, then there' would have been no mistake in the signal and no injury to Fouts.
There is such a persistent effort to uphold Barnes in the case that occasionally the facts in the record are inadvertently misstated. One incident will illustrate. The majority opinion speaks of Barnes’ view being hindered by looking against the light. Now, be it remembered that this injury occurred at noon,. that in all human probability if this track was east and west, as the record shows, and Barnes was on the south side, Fouts was to his west, and we have no information that the sun was not in its usual position to the south. If that be true, it is difficult to understand how Barnes was looking toward or into a degree of light that' impaired hís vision, as suggested in the majority opinion.
Let us apply another test. When the plaintiff had offered evidence showing, or tending to show, that he gave a proper “back-up.” signal from the right' side of the top of the rear box car,' extending his body as far southward as he could; that the engineer was on the same side of the train; that; the place and manner of- giving the “back-up” signal was in accord with “good railroading;” *325 that after giving the signal he poised and balanced his body to meet the sudden movement of the train pursuant to such “back-up” signal; that the train was thereupon, contrary to the conductor’s signal, moved forward instead of backward, causing plaintiff’s injury, and that the rule of the company, admitted by Barnes to be correct, required the engineer to be sure of his signals before he moved the train—all these facts most clearly and conclusively make a prima facie case of negligence against the railroad company. Who dare contend that this does not make a clear, prima facie case against the railroad company? If this is not a prima facie' case, pray what would make a prima facie case? What element is lacking to make a prima facie case?
No one has contended before this court that the trial judge should have directed a verdict at the close of the plaintiff’s case, and the majority opinion nowhere indicates that such direction should have been made by the trial judge at the close of plaintiff’s case. If the defendant had not offered any testimony it must follow most conclusively that Fouts was entitled to a verdict, and the question, simply was, how much?
But it is contended that because Barnes, the engineer, who testified for the defense, says that, in perfect good faith, he understood the signal as meaning go forward, therefore the prima facie case of negligence is overcome; yes, more, is absolutely eliminated, and there is now no evidence of negligence.
That is a new rule of practice, a new rule of-inference, presumption and deduction. It is an *326 astonisher in the laws of logic. All that Barnes’ testimony could possibly do would be to make it a question for the jury, one for them to determine whom to believe and whom not to believe, and to what degree to believe them. They were in a position to do that because of seeing and hearing the witnesses, but we are not.
It is a primary fact in the great majority of cases of negligence that there is no bad faith, no malice, no willful intent, but quite the contrary. But still it is negligence. To say that Barnes’ evidence claiming good faith per se destroys the plaintiff’s evidence is about as plausible a deduction as to say that Barnes ordered the fireman to burn up the plaintiff’s evidence so that by the time it reached the court it would be merely ashes and cinders.
This proposition is absolutely too ridiculous to need any further comment. Its absurdity is apparent on first analysis. When the plaintiff had' made a prima facie case it then became a question for the jury, and nothing that the defense could possibly offer by way of denial, explanation or mitigation could or would destroy the right of the plaintiff to have his case submitted to the jury upon the evidence in the record. It being a case for the jury it is not a case for this court, which should not weigh the evidence in cases of this character.
•'But again, it is impossible for this court to have before it in this record all the evidence that was' offered in the trial court. Both Fouts and Barnes repeatedly demonstrated the various signals, “backup” signals and “go-forward” signals, so that the *327 jury and trial judge could understand by manual illustration just what those signals were and how they were given. Of course, it is folly to say that such demonstrations could be reproduced in this record. The majority opinion, however, seeks to overcome this infirmity by holding that this evidence as offered in the trial court was incompetent, though there is no such holding in the syllabus. The reason assigned in the opinion for its incompetency is that the conditions under which the signals were given on the day of the injury and on the day of the trial were entirely different. The record does not disclose any objections to these demonstrations, but even if it did, this character of evidence has always been recognized as of the very highest and most convincing type. If the doctrine of the majority opinion be true, then before such evidence could be given a railroad track, train and engine would have to be built in the court room before the jury could be put in the situation of the parties and before the parties could demonstrate their various signals and movements in connection with the operation of the train. The absurdity of this contention is too apparent to need any argument whatsoever.
During the preparation of this opinion I have again carefully gone over the very able and learned brief of counsel for The B. & O. Railroad Company. Under the head of “Argument” the following subheads appear as the contentions of the railroad company, first, “No negligence or want of ordinary care shown on the part of the engineer.”
I claim that this involved no more than the determination and conclusion of fact for the jury. *328 It is not claimed here that there was no evidence of negligence or want of ordinary care.
The second subhead of plaintiff in error’s brief is as follows: “Failure of the conductor, Charles H. Fouts, to exercise ordinary care, the sole proximate cause of the accident.”
If the question of negligence as against the railroad company is a question for the jury, clearly it must follow by parity of reason and law that the question of negligence upon the part of the plaintiff is also a question of fact for the determination of the jury, and, of course, it is uniformly held that the question of proximate cause of the injury is a question also for the jury.
The third subhead deals with the “Law applicable to the case,” whether or not this cause of .action is governed by the federal employers’ liability act of 1908, or whether it is governed by the Ohio Metzger act of 1908.
The remaining subhead is “Requests to charge before argument,” and the last the “Interrogatories” that the court refused to submit to the jury.
Nowhere in the brief of counsel for the railroad company is any claim made that there was no evidence of negligence against the railroad company to be submitted to the jury, but that the evidence as a whole does not show negligence against the railroad company.
Negligence being a conclusion of fact from the facts proven, it was unquestionably for the jury to determine, and therefore not a question for this court.
*329 I want to make another contention here. I think it is high time that the same be made.
We presumably have in this country a constitutional guaranty of the right of trial by jury. This right is declared and safeguarded in the federal constitution as well as in every state constitution, the language generally being that “the right of-trial by jury shall be inviolate.” The judgment of this court absolutely and squarely violates that constitutional provision. The supreme court of the'United States has dealt with this same question in a comparatively recent case, decided April 21, 1913, Slocum v. New York Life Insurance Co., 228 U. S., 364, the syllabus of which reads as follows: “The power of a Federal court to re-examine issues of fact tried by a jury must under the Seventh Amendment be tested by the rules of the common law.
“Under the rules of the common law an appellate court may set aside a verdict for error of law in the proceedings and order a new trial but it may not itself determine the issues, of fact.
“Under the rules of the common law when the court sets aside a verdict' there arises the same right of trial by jury as in the first instance. ■
“In the trial by jury, the right to which is secured by the Seventh Amendment, both the court and the jury are essential factors.
“Whether the facts are difficult or easy of ascertainment is immaterial, the guaranty of the Seventh Amendment operates to require the issues to be settled by the verdict of a jury unless the right thereto be waived.”
*330 As vigorously as I can I desire to contend against this judgment on constitutional grounds, because:
First. It violates both federal and state constitutions, in that this court here undertakes to re-examine and reconsider the evidence and find the same contrary to the finding of the jury and trial judge.
Second. After making such unwarranted finding, contrary to that of the trial court, this court has gone the limit and rendered final judgment contrary to the verdict of the jury and the judgment of the trial court thereon, and contrary to both state and federal constitutions. If, now, this court has any right, in violation of its own rule and the plaintiff’s constitutional rights, to reverse the case upon the weight of the evidence, it most certainly cannot have the right to enter final judgment and forever foreclose the defendant from a further right to submit his case to a jury.
I am not unaware of the fact that an appellant court has often heretofore assumed the right to reverse the judgment of a jury and the judgment of a trial court on the ground that the verdict is against the weight of the evidence, and also then to enter the judgment that it believes the trial court should have entered. But I here and now challenge the right of any appellate court to do either under the provisions of the constitutional guaranty of the right of trial by jury. The assertion of this right is not only sanctioned in some jurisdictions by long practice, but it may be said that it is further fortified by the provisions of our statutes authorizing a new trial upon the ground *331 that the verdict is against the weight of the evidence. But I desire to deny the constitutionality of any such statute in derogation and violation of the rights of the parties to a trial by jury. Such an assertion of right as is contended for here by plaintiff in error amounts to a denial and defeat of the right of trial by jury. It is in effect a mere mockery to say at their pleasure appellate courts may ignore the verdict of the jury and substitute therefor their own judgment upon a mere question of fact, when the constitutional provisions have all endeavored to safeguard the rights of all parties so as to make all questions of fact in suits at law triable by jury as it was under the old common law. This contention in the federal case last referred to I ardently support.
I want to quote briefly from the majority opinion in that case and invite all interested counsel and. parties to carefully read the entire opinion, minority as well as majority. ! pause here to suggest that, on the matter of law, so far as applicable to the case at bar, there is no essential difference between the two opinions, the minority opinion being founded upon the claim that, upon the whole record, there was no issue of fact to be submitted to a jury; that the facts are substantially all conceded, and that, therefore, it became a question of law for the court. But the majority opinion held that notwithstanding the trial court should have directed a verdict in accordance with the finding of the circuit court of appeals, still the circuit court of appeals had no right to assume the question of fact and enter final judgment, but, upon the contrary, it was their duty to remand the case to the trial court for another trial by jury.
*332 Judge Van Devanter quotes freely from the case of Parsons v. Bedford, 3 Pet., 433. The opinion is by Mr. Justice Story: “Trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy * * *. One of the strongest objections originally taken against the Constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the Constitution was adopted, this right was secured by the Seventh Amendment of the Constitution pro-, posed by Congress, and which received an assent of the people so generally as to establish its importance as a fundamental guarantee of the rights and liberties of the people. . * * * The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue'was tried, or to which the record was properly returnable, or the award of a venire facias de novo, by an appellate court, for some error of law which intervened in the proceedings."
In Walker v. New Mexico, etc., Railroad Co., 165 U. S., 593, decided in 1897, Justice Brewer said: “Its aim [Seventh Amendment] is not to preserve mere matters of form and procedure but substance of right. This requires that questions-of fact in common law actions shall be settled by a jury, and that the court shall not assume directly or indirectly to take from the jury or to itself such prerogative. * * *
“Now a general verdict embodies both the law and the facts. The jury, taking the law as given *333 by the court, apply that law to the facts as they find them to be and express their conclusions in the verdict. The power of the court to grant a new trial if in its judgment the jury have misinterpreted the instructions as to the rules of law or misapplied them is unquestioned, as also when it appears that there was no real evidence in support of any essential fact. These things obtained at the common law; they do not trespass upon the prerogative of the jury to determine all questions of fact.”
In Capital Traction Co. v. Hof, 174 U. S., 1, decided in 1899, Mr. Justice Gray holds to the same doctrine.
Judge Van Devanter, after, reviewing these numerous cases, uses this language: “These decisions make it plain, first, that the action of the Circuit Court of Appeals in setting aside the verdict and assuming to pass upon the issues of fact and. to direct a judgment accordingly must be tested by the rules of the common law; second, that, while under those rules that court could set aside the verdict for error of law in the proceedings in the Circuit Court and order a new trial, it could not itself determine the facts; and, third, that when the verdict was set aside there arose the same right of trial by jury as in the first instance. How, then, can it be said that there was not an infraction of the Seventh' Amendment? When the verdict was set' aside the issues of' fact -were left undetermined, and until they should be determined anew no judgment on the merits could be given. The new determination, according to the rules of the common, law, mould be had only *334 through a new trial, with the same right to a jury as before. Disregarding those rules, the Circuit Court of Appeals itself determined the facts, without a new trial. Thus, it assumed a power it did not possess and cut off the plaintiff’s right to have the facts settled by the verdict of a jury.
“While it is true, as before said, that the evidence produced at the trial was not sufficient to sustain a verdict for the plaintiff and that the Circuit Court erred in refusing so to instruct the jury, this does not militate against the conclusion just stated. According to the rules of the common law, such an error, like other errors of law affecting a verdict, could be corrected on writ of error only by ordering a new trial. In no other way could an objectionable verdict be avoided and full effect given to the right of trial by jury as then known and practiced. And this procedure was regarded as of real value, because, in addition to fully recognizing that right, it afforded an opportunity for adducing further evidence rightly conducing to a solution of the issues. In the posture of the case at bar the plaintiff is entitled to that opportunity, and for anything that appears in the record it may enable her to supply omissions in her own evidence, or to show inaccuracies in that of the defendant, which will rightly entitle her to a verdict and judgment in her favor. * * *
“In the trial by jury, the right to which is secured by the Seventh Amendment, both the court and the jury are essential factors. To the former is committed a power of direction and superintendence, and to the latter the ultimate determination of the issues of fact. Only through the co-opera *335 tion of the two, each acting within its appropriate sphere, can the constitutional right be satisfied. And so, to dispense with either or to permit one to disregard the province of the other is to impinge on that right. * * *
“To the suggestion that in so holding we are but adhering to a mere rule of procedure at common law there is a twofold answer: First, the terms of the Amendment and the circumstances of its adoption unmistakably show that one of its purposes was to require adherence to that rule, which in long years of practice had come to be regarded as essential to the full realization of the right of trial by jury; and, second, the right to a new trial in a case such as this, on the vacation of a favorable verdict secured from a jury, is a matter of substance and not of mere form, for it gives opportunity, as before indicated, to present evidence which may not have been available or known before, and also to expose any error or untruth in the opposing evidence. As is said in Blackstone’s Commentaries, vol. 3, p. 391: ‘A new trial is a rehearing of the cause before another jury. * * * The parties come better informed, the counsel better prepared, the law is more fully understood, the judge is more master of the subject; and nothing is now tried but the real merits of the case.’ ”
In conclusion, I contend that the verdict of the jury is abundantly supported by the evidence as contained in the record of the case; that, if it were not so supported in the judgment of this court, we have no legal or constitutional right to nullify or set it aside on the mere ground that it is *336 against the weight of the evidence; that we have absolutely no right to enter final judgment contrary to the verdict of the jury; and that, finally, by the judgment of the supreme court, we have amended the Ohio Constitution, Article I, Section 5, Bill of Rights, which reads, “The right of trial by jury shall be • inviolate,” by adding thereto as “court-made” constitution the words, “except in cases where the trial judge or some appellate court thinks otherwise as to the facts in the case.”