In re AVN CORPORATION, Debtor.

Samuel K. Crocker, Trustee, Plaintiff,

v.

David Namer, Sandra Namer, and Grace Russo, Defendants.

Bankruptcy No. 98–20098–L.
Adversary No. 98–0434.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 21, 1999.

E. Franklin Childress, Jr., Memphis, Tennessee, for plaintiff.

David I. Namer, Memphis, Tennessee, pro se.

## MEMORANDUM

JENNIE D. LATTA, Bankruptcy Judge.

Before the Court is Defendant David Namer's request for a jury trial in this

adversary proceeding. None of the other parties has requested a jury trial and the Plaintiff opposes Namer's request. The parties have submitted written memoranda in support of their respective positions and have waived oral argument on the issue. This is a core proceeding. 28 U.S.C. § 157(b)(2). After reviewing the facts of the case and the record as a whole, the Court makes the following findings of fact and conclusions of law. *See* FED. R.BANKR.P. 7052.

### FINDINGS OF FACT

On April 13, 1998, Sentinel Trust Company filed a complaint against the Debtor and Grace Y. Russo. The complaint alleged that assets of the Debtor were fraudulently conveyed to Ms. Russo for the improvement of certain real property and that additional corporate funds were transferred to Ms. Russo to purchase personal property for David Namer and Sandra Namer. An amended complaint was filed on October 15, 1998, providing additional facts regarding the alleged fraudulent conveyances and adding David Namer, president of the Debtor, and Sandra Namer, his spouse,[1] as Defendants. The amended complaint requests a judgment in the amount of the funds allegedly transferred by AVN Corporation to Ms. Russo for improvements to the real property (approximately $245,074.14), a judgment in the amount of the funds transferred by AVN Corporation with respect to the personal property, and imposition of a constructive trust and continuing lien against the real and personal property to secure payment of any amount due.

On October 21, 1998, an agreed order was entered by the Court substituting Samuel K. Crocker, the Chapter 11 Trustee, as Plaintiff in the adversary proceeding.[2] Thereafter, Defendant David Namer filed an answer to the amended complaint and asserted a counterclaim against the Trustee for breach of fiduciary duty in the administration of the estate. Namer's answer included a demand for trial by jury.

In his memoranda in support of the request for a jury trial, Namer asserts that the Seventh Amendment of the Constitution of the United States entitles him to a trial by jury in this cause. Specifically, Namer argues that the Trustee's requested relief, a monetary judgment for a determinate sum, sustains his contention that the fraudulent conveyance action is not an action in equity, but an action at law. Namer further asserts that under the mandate of the United States Supreme Court in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); and *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), a person who has not submitted a claim against the bankruptcy estate has a right to a jury trial in an action to recover an allegedly fraudulent conveyance notwithstanding Congress' designation of fraudulent conveyance actions as core proceedings. To this end, Namer asserts that although he has filed a "proof of interest"[3] in this case, evidencing an equity interest through ownership of one share of AVN Corporation stock, he has filed no "proof of claim" against the Debtor. Namer further proposes a distinction between being a "party in interest" which arises from shareholder status and "making a claim of interest" which arises from filing a proof of claim. Under his theory, Namer's proof of interest in AVN Corporation granted him status as a party in interest but did not

---

1. Sandra Namer denies that she is related, by blood or by marriage, to either of the other Defendants.

2. Defendant AVN Corporation was dismissed from the adversary proceeding pursuant to a consent order entered January 19, 1999.

3. The Defendant bought one share of stock in AVN Corporation from the Alexandra Vivian Namer Trust. The trustee, Robert Namer, executed the transfer of the stock to the Defendant and copies of the stock certificates were filed with the Court on March 10, 1999.

invoke the jurisdiction of the Bankruptcy Court. No authority was cited supporting this distinction.

On March 2, 1999, and March 31, 1999, the Trustee filed a memorandum and supplemental memorandum, respectively, in opposition to Namer's demand for a trial by jury. The Trustee alleges that the Defendant is not entitled to a jury trial for two reasons: (1) the fraudulent conveyance action is an action in equity, as are the remedies sought; and (2) by filing his proof of interest on March 11, 1999, the Defendant affirmatively submitted to the jurisdiction of the Bankruptcy Court and lost his right to a jury trial.

By prior order of the Court, David Namer's counterclaim was stricken as improper and will not be considered in the matter presently before the Court.

### CONCLUSIONS OF LAW

The issues before the Court are (1) whether the Trustee's inclusion of a request for equitable relief, coupled with a request for monetary relief, altered the legal nature of the fraudulent conveyance action so as to preclude trial by jury; and (2) whether the Defendant, by filing a proof of interest, submitted to the jurisdiction of the Bankruptcy Court. The Court will address these issues in order.[4]

#### A. *Inclusion of a Request for Equitable Relief*

■ The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be pre-served...." U.S. CONST. amend. VII. The Supreme Court has construed the phrase "suits at common law" to refer to suits in which "legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (quoting *Parsons v. Bedford,* 3 Pet. 433, 28 U.S. 433, 7 L.Ed. 732 (1830)). Determining whether a statutory action involves ascertaining legal rights and is therefore subject to the jury trial guarantees of the Seventh Amendment, requires analysis under the three-part test articulated by the *Granfinanciera* Court:

> First, we compare the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citation omitted). The second stage of this analysis is more important than the first. *Id.* at 421, 107 S.Ct. at 1837. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

*Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790.[5]

---

**4.** Although the Defendant addressed the significance of Congress' designation of core versus noncore proceedings, this Court declines to examine that issue.

> [T]he core versus noncore dichotomy which has formed the basis some courts have utilized in determining the right to a jury trial in bankruptcy proceedings no longer appears a relevant distinction. Rather, simplistically stated, the controlling issue, for jury trial purposes, now appears to be whether the proceeding is one which sounded in law or in equity at common law. If a proceeding is inherently legal in nature and the person has not filed a proof of claim, the Seventh Amendment entitles that person to a jury trial upon demand.

*Haden v. Edwards (In re Edwards),* 104 B.R. 890, 893 n. 4 (Bankr.E.D.Tenn.1989) (citing *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).

**5.** In the wake of the *Granfinanciera* decision, Congress addressed procedural concerns regarding a non-Article III court's ability to

1. *Comparison to Eighteenth–Century Actions*

Under the first level of inquiry, the Supreme Court recognized that "[t]here is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th–century England." *Id.* at 43, 109 S.Ct. at 2791.

> In England, long prior to the enactment of our first Judiciary Act, common law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts.... These actions, like all suits at law, were conducted before juries.

*Id.* (quoting *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932) (internal citations omitted)). Specifically, in an action to recover an alleged fraudulent conveyance of a determinate sum of money, the Supreme Court concluded that the action would have had to be brought at law in eighteenth-century England, and a court of equity would not have adjudicated it.

2. *Legal or Equitable Nature of Remedy Sought*

Like the *Granfinanciera* Court, our inquiry focuses on the second prong of the analysis. The Trustee's complaint in the instant adversary proceeding contains three specific counts for relief. Count I is based on an alleged fraudulent conveyance and seeks entry of a judgment against the Defendants in the amount of the funds transferred by AVN Corporation to Grace Y. Russo for improvements to certain real property. Count II is also based on an alleged fraudulent conveyance and similarly seeks entry of a judgment against the Defendants in the amount of the funds transferred by AVN Corporation concerning certain personal property. Count III requests imposition of a constructive trust and a continuing lien against the subject properties to secure payment of any amounts due.

Under the first and second counts of the complaint, the requested relief of entry of a monetary judgment for a determinate sum is entirely legal in nature. The third count of the complaint however, requests imposition of a constructive trust and continuing lien, both of which are equitable in nature.

It is well-settled that the relief traditionally sought and granted for a fraudulent conveyance is an award for damages. *Beeline Eng'g & Constr. Inc. v. Monek (In re Beeline Eng'g & Constr. Co.),* 139 B.R. 1025, 1026–27 (Bankr.S.D.Fla.1992). It is also well-established that suits in equity cannot be sustained when a complete and adequate remedy exists at law. *See Granfinanciera,* 492 U.S. at 48, 109 S.Ct. at 2794 (citing *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)). Thus, notwithstanding the Trustee's request for both legal and equitable remedies, the Court concludes that the essence of the relief sought sounds in law rather than equity. The complaint plainly seeks the type of relief traditionally provided by courts of law, and the remedies available at law are capable of providing the estate with complete and adequate relief. Annexing an equitable remedy to a

---

conduct jury trials. Section 157 of the United States Code was amended to include subsection (e) which empowers a bankruptcy judge to conduct a jury trial, provided that the bankruptcy judge is specially designated to exercise such jurisdiction by the district court and further provided that all parties expressly consent. 28 U.S.C. § 157(e). *See also* FED. R.BANKR P. 9015(b).

By General Order issued by the United States District Court for the Western District of Tennessee, all bankruptcy judges of the Western District of Tennessee have been des-

ignated to conduct jury trials, with the express consent of all the parties, if the right to jury trial applies in any proceeding that may be heard by a bankruptcy judge. In addition, the District Court authorized the bankruptcy courts to promulgate a standing order or local rule governing procedure in jury trials, including a procedure for trial by consent of all the parties. *See In re The Authority of Bankruptcy Judges to Conduct Jury Trials in Certain Civil Proceedings,* Admin. Order No. 95–28 (W.D.Tenn. October 19, 1995).

legal or statutory cause of action will not transform the legal nature of an action into an action at equity.

This determination, however, does not conclude the Court's analysis. As previously stated, the Defendant filed a proof of interest in this bankruptcy proceeding evidencing his ownership of an equity security interest in the Debtor. Our focus therefore, turns to whether the Defendant's filing of a proof of interest constitutes a submission to the jurisdiction of the Bankruptcy Court.

### B. Effect of Filing a Proof of Interest

■ The Defendant argues that a shareholder of a corporate entity does not have a claim in a bankruptcy estate simply by virtue of being a shareholder. He asserts that stock ownership entitles the shareholder to an equity position in the corporate entity, but does not vest a shareholder with ownership of any corporate asset. An equity interest, therefore, creates only the right to receive a portion of any surplus that the corporate entity may have after all claims against the estate have been satisfied. There is a difference, Namer submits, between being a "party in interest," which arises from shareholder status and "making a claim of interest" which would trigger the process of allowance and disallowance of claims and thereby invoke the jurisdiction of the Bankruptcy Court.

The Trustee argues that the Defendant's ownership interest in the Debtor establishes a claim in the bankruptcy estate, and through that ownership the fraudulent conveyance action arises as part of the process of allowance and disallowance of claims.

Under the *Katchen, Granfinanciera,* and *Langenkamp* line of cases, the Supreme Court made clear that the filing of a proof of claim against a bankruptcy estate, by a creditor, triggers the process or allowance and disallowance of claims, thereby subjecting that creditor to the bankruptcy court's equitable jurisdiction. *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (citing *Granfinanciera,* 492 U.S. at 58–59, 109 S.Ct. at 2799–2800). The focal point with regard to the filing of a proof of claim, is whether the creditor's claim and the action by the trustee "become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Granfinanciera,* 492 U.S. at 57–58, 109 S.Ct. at 2798–99. Our analysis, by comparison, centers on the effect of filing a proof of interest in a bankruptcy estate by an equity security holder.

#### 1. Code's View of Creditors and Equity Security Holders

■ The manner in which the Code views creditors and equity security holders establishes a framework for how their respective claims or interests are treated in the bankruptcy process. For example, the Code's broad definition of creditor as an entity with a claim against the debtor,[6] and the language of 11 U.S.C. § 501(a)[7] providing creditors and equity security holders distinct mechanisms to assert their respective claims or interests against an estate make clear that an equity security holder fails to possess that which symbolizes creditor status, i.e., a claim against the estate. "It appears clear that the drafters of the Code intend part owners of a debtor, equity shareholders, not to be catego-

---

6. 11 U.S.C. § 101(10) defines "creditor" as an:

   (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
   (B) entity that has a claim against the estate of a kind specified in section 348(d),

502(f), 502(g), 502(h) or 502(i) of this title; or
   (C) entity that has a community claim.

7. 11 U.S.C. § 501(a) provides: "A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest."

rized as creditors." *In re Charter Company*, 44 B.R. 256, 258 (Bankr.M.D.Fla.1984).

The non-creditor status of equity security holders has been recognized by other courts in instances where a shareholder, whose claim encompassed more than the return of their investment, ceased to be an equity security holder and become a creditor of the estate. *See Louisiana Indus. Coatings, Inc. v. Pertuit (In re Louisiana Indus. Coatings, Inc.)*, 31 B.R. 688, 695 (Bankr.E.D.La.1983) (shareholder lost equity holder status and became a creditor after entering into stock redemption agreement); *In re Stirling Homex Corp.*, 579 F.2d 206, 212 (2d Cir.1978), *cert. denied by Jezarian v. Raichle*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (stockholders whose claims were not purely for the return of their equity investment were treated as creditors.)

> 2. *Filing Proof of Interest Constitutes Submission to Equity Jurisdiction*

■■■■ As previously mentioned, 11 U.S.C. § 501(a) provides alternate mechanisms for creditors and equity security holders to present their respective interests to the bankruptcy court as part of the reorganization process. Creditors present their claims to the court by filing a proof of claim, whereas equity security holders assert their rights to distribution of the proceeds of a solvent corporate debtor by filing a proof of interest. *See In re Beck–Rumbaugh Assocs., Inc.*, No. 85–00917S, 1988 WL 125701 at *4 (Bankr.E.D.Pa. Nov. 21, 1988). While the filing of a proof of claim triggers the process of allowance and disallowance of claims and prompts the restructuring of the debtor-creditor relationship, the filing of a proof of interest, which applies only in Chapter 11 cases, is not recognized in the claims process and becomes significant only when the remaining assets of the solvent corpora debtor are being distributed to shareholders. *See Granfinanciera*, 492 U.S. at 57–58, 109 S.Ct. at 2798–99; *Beck–Rumbaugh*, 1988

WL 125701 at *4. Although creditors and equity security holders employ different procedures for presenting their interests to the court, the language of section 501 evidences a clear intention that equity security holders share in the distribution of the estate pursuant to the court's equity jurisdiction.

This conclusion is further supported by other provisions of the Code. Chapter 11, for example, expressly contemplates the interests of equity security holders and provides for appointment of committees for both creditors and equity security holders. *See* 11 U.S.C. § 1102(a). Additionally, Section 501, which authorizes bankruptcy courts to subordinate creditor's claims through application of principles of equitable subordination, also authorizes subordination of equity security interests. *See* 11 U.S.C. § 501(c). Thus, the Code makes clear that distribution, resolution, or even equitable subordination of claims or interests of creditors and equity security holders, once before the court, become part of bankruptcy process and are subject to the court's equitable jurisdiction.

The Court therefore concludes that the Defendant's filing of his proof of interest constituted a submission to this Court's equity jurisdiction with regard to any distribution of the proceeds of the Debtor to Namer, as an equity security holder. Any surplus distribution that may be made, will occur only after all of the claims against the estate have been satisfied and will be made pursuant to this Court's direction.

The Sixth Circuit has recognized that "under general equity principles surplus assets remaining after the payment of all debts timely presented should be returned to the bankrupt, and if the bankrupt is a corporation and its corporate existence has been terminated, the Court, in the exercise of its equity jurisdiction, may provide for such surplus to be distributed to its stockholders." *Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir.1945) (internal citation omitted).

In the context of this adversary proceeding, the Chapter 11 Trustee is seeking to recover assets of the estate which, if recovered, will be applied in satisfaction of the allowed claims. Success or failure in this action will effectively determine whether the estate can fully satisfy the allowed claims and notably, whether any surplus funds will be on hand for distribution either to the equity security holders or to the Debtor. Although the Debtor has the option of maintaining or terminating its corporate status, it is the equity jurisdiction of this Court that will effectuate any surplus distribution. As a shareholder of the Debtor, the Defendant has an obvious interest in the resolution of this adversary proceeding, and by filing his proof of interest he not only asserted his right to receive proceeds of the Debtor, but also petitioned the Court for resolution of his interests as an equity security holder.

The Court further finds that Namer's conduct throughout this bankruptcy case precludes the Defendant from denying his submission to the Court's jurisdiction. Specifically, the Court finds compelling the steps taken by the Defendant to be heard in hearings related to the main bankruptcy case. The Defendant twice attempted to appear in the main bankruptcy case in order to seek the disqualification of the Trustee (Doc. Nos. 221 and 229); he has appeared in prosecution of a motion to have the bankruptcy judge recuse herself from hearing future proceedings in this case (Adv.Proc. No. 98–0434, Doc. No. 32–1); and he has objected to the unsecured and secured claims of Sentinel Trust Company (Doc. Nos. 215 and 216). Indeed the Court can recall few, if any, hearings in this bankruptcy case at which Namer did not appear and make substantial arguments in support of his position.

On December 23, 1998, Namer wrote a letter to the Clerk of Court in which he states, "Please be advised that I am appearing in the referenced matter Pro Se." The "referenced matter" is the Chapter 11 case of AVN Corporation, No. 98–20098–L, and related adversary number 98–0434. Enclosed with the letter were two pleadings for filing in the main bankruptcy case, the "MOTION TO REMOVE CHAPTER 11 TRUSTEE, SAM CROCKER, AND TO CONSOLIDATE WITH ADVERSARY PROCEEDING MOTION TO DISQUALIFY" (Doc. No. 221) and the "OPPOSITION TO SENTINEL TRUST COMPANY'S MOTION FOR CLARIFICATION OF CONDITIONAL ORDER GRANTING SENTINEL TRUST COMPANY'S RELIEF FROM THE AUTOMATIC STAY AND FOR DISSOLUTION OF THE FIDELITY & DEPOSIT COMPANY OF MARYLAND'S $20,000 BOND" (Doc. No. 222). On January 8, 1999, Namer filed a second "MOTION TO REMOVE TRUSTEE" (Doc. No. 229) in the main bankruptcy case. Attached to this motion was a copy of a "Sales Agreement," pursuant to the terms of which Namer, as Buyer, "agrees to purchase from Seller 100% of the outstanding stock of AVN Corporation, a Tennessee corporation." The Seller under the Agreement is the Alexandra Vivian Namer Trust, by Robert Namer, Trustee. Based upon Namer's prior statements, the Court is aware that Alexandra Vivian Namer is David Namer's minor daughter, and Robert Namer is David Namer's brother. The "Sales Agreement" further recites that:

> 5. The purchase price shall be One Dollar ($1.00) and other good and valuable consideration which sellers [sic] herewith acknowledge receipt of. Furthermore, to the extent that David Namer receives anything [sic] recovery from the existing bankruptcy proceedings, David Namer agrees to pay 45% of all such recovery as an additional component of the purchase price.

The Court denied Namer's motion to remove the trustee, in part because Namer had failed to file a proof of interest with the court and had failed to provide adequate proof of an equity interest in AVN Corporation, i.e., his stock certificate (*See*

"ORDER DENYING DAVID NAMER'S MOTION TO REMOVE SAMUEL K. CROCKER AS TRUSTEE" entered February 24, 1999, Doc. No. 276). Although the Court had made a final ruling on his motion to remove the trustee, Namer filed a Proof of Interest on March 10, 1999 (Doc. No. 281). Attached to the Proof of Interest were two stock certificates of the AVN Corporation dated March 9, 1999, one purporting to be a duplicate issued to the Alexandra Vivian Namer Trust for one share, and the other issued to David Namer for one share.

Based on the filing of the Proof of Interest, this Court has recognized Namer' standing to be heard in the main bankruptcy case. Numerous motions and objections have been filed by the Defendant since that determination, including the objections to the secured and unsecured claims of Sentinel Trust. In those matters, the Defendant, without reservation, invoked the equity jurisdiction of the Court and explicitly sought adjudication of the underlying issues.

Despite the Court's recognition of Namer's standing in the main bankruptcy proceedings, his role in the case remains unclear. Even after the appointment of Mr. Crocker as Chapter 11 Trustee, AVN Corporation has continued to file pleadings and appear through its attorney, Mr. Larry Austin. At times, Namer appears to assert arguments that properly belong to the Debtor. At other times, he has asserted arguments that properly belong to the Debtor's noteholders, whose interests are represented by Sentinel Trust Company as indenture trustee, through its attorney, Mr. Joseph Prochaska. Namer asserts that his status simply is that of a "party in interest." Now, in order to bolster his claim to a jury trial, Namer declares that he has not submitted to the jurisdiction of this Court. The Court will not permit Namer to assert an interest in the Debtor's bankruptcy estate when it suits his purpose and discard such an interest when it does not.

For the foregoing reasons, the Court concludes that David Namer is not entitled to a jury trial in this adversary proceeding and thus that Namer's request for a jury trial should be **DENIED**. A separate order will be issued in accordance with this memorandum.