**In re Donald INSLEY, Debtor.**

**Robert J. Lowther, Jr., Plaintiff,**

**v.**

**Donald Insley, Defendant.**

**Bankruptcy No. 03–34234–MBM.**
**Adversary No. 04–2690–MBM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 25, 2005.

Stanley G. Makoroff, Esq., Pittsburgh, PA, for trustee.

## MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Chief Judge.

**AND NOW**, this **25th day** of **March, 2005**, upon consideration of (a) that portion of the adversary complaint filed by Robert J. Lowther, Jr. (hereafter "Lowther") wherein Lowther objects to the Chapter 7 discharge of Donald Insley, the instant Debtor (hereafter "the Debtor"), pursuant to 11 U.S.C. § 727(a)(2)—(5) & (7), (b) Lowther's Motion to Compel Production in Response to Second Request for Production of Documents Directed to Donald Insley, Debtor/Defendant (hereafter "the Motion to Compel"), (c) the Debtor's Response in Opposition to Plaintiff's Motion to Compel, the parties' briefs in support of their respective positions regarding the Motion to Compel, and both of Lowther's Document Production Requests (hereafter respectively "First Document Production Request" and "Second Document Production Request"), and (d) the Joinder of the Trustee, wherein Stanley Makoroff, the bankruptcy trustee (hereafter "the Trustee") for both the instant debtor and Allegheny Metalworking Corporation (hereafter "Allegheny")—Allegheny is an insider of the Debtor that itself also filed for bankruptcy—joins in the Motion to Compel solely with respect to Second Document Production Request # 10 (hereafter "the Trustee's Joinder"), which particular request seeks information regarding an alleged fraudulent transfer of funds to the Debtor from Allegheny that is conceded to have occurred by at least June 26, 2001;

and in light of the Court's Memorandum and Order of Court dated August 24, 2004, that was entered in the instant bankruptcy case (hereafter the "August 24, 2004 Court Order");

and after notice and a hearing on the Motion to Compel held on December 16, 2004,

it is **hereby ORDERED, ADJUDGED, AND DECREED** that

(a) the Motion to Compel is **GRANTED in part and DENIED in part** as set

forth, and for the reasons given, below; and

(b) a status conference is scheduled for **May 12, 2005, at 10:30 a.m.**

## I.

The Debtor generally objects to everything that is sought by Lowther in the Second Document Production Request, and gives, in his response to such request, as reasons for such objections that such discovery requests (a) have been rendered moot by Lowther's filing of his objection to the Debtor's Chapter 7 discharge, (b) are unreasonably duplicative since, argues the Debtor, such requests are repetitive of information sought in the First Document Production Request, (c) are unduly burdensome, and/or (d) are irrelevant, or are not designed to lead to admissible evidence that pertains, to Lowther's discharge objection. As set forth in the Debtor's opposition response to the Motion to Compel, the Debtor objects, in particular, to the Second Document Production Request to the extent that the same seeks various documents that cover the 48-month period—rather than the 24-month period—that precedes the Debtor's bankruptcy petition filing; the Debtor so objects on the basis that information sought outside the aforesaid 24-month period is irrelevant, or not designed to lead to admissible evidence that pertains, to Lowther's discharge objection. The Debtor also resists production of many of the documents that are sought by Lowther in both of Lowther's document production requests on the basis that such documents either (a) belong to his wife rather than himself, (b) are in the possession of the Trustee or have apparently been disposed of by the Trustee, or (c) are apparently in the possession of the Debtor's bank. As Lowther observes, and the Court notes as well, the particular objections by the Debtor as described in the preceding sentence herein were advanced in his response to the First Document Production Request but not in his response to the Second Document Production Request; because such objections were omitted from the Debtor's response to the Second Document Production Request, Lowther contends that the Debtor has waived such objections. Lowther, not surprisingly, disputes the merits of each of the aforesaid discovery objections by the Debtor.

■ As an initial matter, the Court observes that much of what is sought via the Second Document Production Request is, in one way or another, similar to that which is sought via the First Document Production Request. Consequently, and because the Debtor objects to much of the Second Document Production Request on the basis that the same is duplicative or repetitive of the First Document Production Request, the Court holds that the Debtor has not waived any of the discovery objections that he voiced in his response to the First Document Production Request but that he omitted from his response to the Second Document Production Request.

■ As for the numerous discovery objections by the Debtor set forth above, the Court rules as follows:

(a) Without going through each of the 16 specific document production requests contained within the Second Document Production Request, the Court summarily holds that each, excepting for Request # 10, is both relevant and designed to lead to admissible evidence that pertains to Lowther's discharge objection—therefore, the Court overrules the Debtor's discovery objection that is based on relevance grounds. In particular, the Court overrules the Debtor's objection that discovery

should be limited to documents that cover only the 24–month period that precedes the Debtor's bankruptcy petition filing. The Court so rules, *inter alia,* because (i) existing relevant statutes and rules do not warrant such a restriction on discovery, some case authority to the contrary notwithstanding, (ii) Lowther objects to the Debtor's discharge under, *inter alia,* § 727(a)(3)—(5), which statutory provisions, unlike § 727(a)(2)(A) and (7), do not contain one-year lookback restrictions, (iii) Lowther questions the veracity of the Debtor's answers in his Statement of Financial Affairs that go to the issue of the Debtor's income (i.e., Questions 1 & 2), which answers constitute oaths and are, therefore, actionable under § 727(a)(4)(A), and one of which answers (i.e., Question 1) pertains to information that goes back roughly 35 months prior to the date upon which the Debtor filed for bankruptcy,[1] and (iv) Lowther also questions the veracity of statements that the Debtor has made regarding income of Allegheny, which statements (A) may have been made within one year of the Debtor's November 13, 2003 filing of his individual bankruptcy petition, (B) perhaps constitute oaths and, therefore, might be actionable via § 727(a)(7) and (a)(4)(A), and (C) might pertain to information that could go back as far as 47 months prior to the date upon which the Debtor filed for bankruptcy;[2]

(b) The Court summarily overrules the Debtor's objection that the requests contained in the Second Document Production Request are unduly burdensome—the Court so rules because the Debtor has failed to demonstrate to the Court why such requests are so burdensome;

(c) As for the Debtor's objection that the requests made in the Second Document Production Request are unreasonably duplicative or repetitive of information sought in the First Document Production Request, the Court sustains such objection to the limited extent that the Debtor has produced documents in response to the First Document Production Request—put differently, the Debtor need not produce documents that he has already produced. However, the Debtor must produce documents that have been requested but that have not yet been produced, and that the request for such documents has now been made twice is of no consequence to the Motion to Compel;

(d) The Court overrules the Debtor's objection that the Second Document

---

1. The Court arrives at the 35–month figure because (a) Question 1 asks for income information from the beginning of the calendar year in which a case is commenced to the actual date that such case is commenced, plus information for the two years immediately preceding such calendar year, (b) the Debtor filed for bankruptcy on November 13, 2003, and (c) the Debtor, pursuant to such Question 1, was thus obligated to provide income information from January 1, 2001, to November 13, 2003, or for a period of roughly 35 months prior to the date upon which he filed for bankruptcy.

2. The Court arrives at the 47–month figure because (a) of the information, as set forth in footnote 1 above, that is sought via Statement of Financial Affairs Question 1, (b) Allegheny filed for bankruptcy on November 25, 2002, and (c) the Debtor, by virtue of such Question 1 and on behalf of Allegheny, was thus obligated to provide income information for Allegheny spanning from January 1, 2000, to November 25, 2002, or for the period of roughly 35 months that commenced approximately 47 months prior to the November 13, 2003 filing by the Debtor of his individual bankruptcy petition.

Production Request has in some way been rendered moot by Lowther's filing of his discharge objection because Lowther is free to discover information that is relevant to his claim subsequent to the bringing of such claim, *see* Fed.R.Civ.P. 26(b)(1), 28 U.S.C.A. (West 2004) (made applicable to the instant matter via Fed.R.Bankr.P. 7026);

(e) The Debtor's objection to having to produce documents that belong to his wife rather than himself is sustained because, although the documents sought from the Debtor's wife appear to be relevant to Lowther's discharge objection, Lowther must, pursuant to Fed.R.Civ.P. 45 (made applicable via Fed.R.Bankr.P. 9016), subpoena the Debtor's wife in order to obtain such documents;

(f) The Debtor's objection to having to produce documents that either are in the possession of the Trustee or have apparently been disposed of by the Trustee is also sustained—the Debtor obviously cannot be ordered to hand over documents that he no longer has; and

(g) Any objection by the Debtor to producing documents that he must first obtain from his bank is overruled because the Debtor can, without undue burden, obtain such documents.

Summarizing the foregoing, **the Debtor must comply with each of the requests contained within the Second Document Production Request, except that he need not (a) comply with Request # 10, (b) produce documents that he has already produced, (c) produce documents that belong to his wife, and (d) produce documents that either are in the possession of the Trustee or have apparently been disposed of by the Trustee.** The Debtor must so comply by April 25, 2005, failing which Lowther shall so inform the Court and a hearing will be scheduled regarding possible sanctions.[3]

## II.

■ As set forth above, the Court rules that the Debtor need not comply with Second Document Production Request # 10 (hereafter "Request # 10"), which particular request seeks information regarding an alleged fraudulent transfer of funds to the Debtor from Allegheny that is conceded to have occurred by at least June 26, 2001. The Court so rules, in part, because (a) the Court has previously ruled that, even were Lowther to preponderantly establish that such alleged fraudulent transfer occurred, he can nevertheless neither thereby prevail on his discharge objection nor successfully object to the Debtor's exemption of his personal residence, *see* August 24, 2004 Court Order, at ¶¶ 4 & 6, and (b) Lowther himself advances no other reason why he would need those documents that are sought via Request # 10. To complete the analysis, the Court also rules as it does notwithstanding the Trustee's Joinder because, even though, as the Court has previously ruled, the Trustee has standing as the Trustee of Allegheny to seek the avoidance of such alleged fraudulent transfer pursuant to 11 U.S.C. § 544(b)(1), *see* August 24, 2004 Court Order, at ¶ 6, the Trustee is now time barred from bringing such avoidance action; because the Trustee may no longer pursue such avoidance action, the documents sought via Request # 10 are of no use to him either.

■ The Court rules that the Trustee is now time barred from bringing an

---

**3.** The Court chooses, at least at this time, not to assess or apportion the costs incurred by the parties relative to the Motion to Compel pursuant to Fed.R.Civ.P. 37(a)(4)(C) (made applicable herein via Fed.R.Bankr.P. 7037).

action to avoid the alleged fraudulent transfer in question (a) because, pursuant to 11 U.S.C. § 546(a)(1)(A), he needed to bring such an action by November 25, 2004 (i.e., 2 years after the November 25, 2002 commencement of the Allegheny bankruptcy case), and (b) since he has yet to bring such an action. Lowther would argue, ostensibly on behalf of the Trustee, that the November 25, 2004 limitations period should be equitably tolled for the Trustee. "The limitation period [imposed by § 546(a)(1)(A)] will not be equitably tolled, however, if the [C]ourt finds that the [T]rustee has not acted diligently enough." 5 *Collier on Bankruptcy,* ¶ 546.02[3] at 546–18 (Bender 2004); *In re Hosseinpour–Esfahani,* 198 B.R. 574, 578–580 (9th Cir. BAP 1996) (same, citing, *inter alia, Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151–52, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984), and *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990)). Lowther contends in his brief in support of the Motion to Compel that, "notwithstanding the Trustee's [J]oinder in the request for the specific information [relevant to the alleged fraudulent transfer in question], the Debtor has refused for nearly a year to produce relevant documents that would allow the Plaintiff [(i.e., Lowther)] and the Trustee to assess the allegations." By virtue of such contention (a) Lowther implies that the Trustee indirectly has sought the production of the documents in question for nearly one year, and (b) the Court understands Lowther to thus contend, *inter alia,* that the Trustee has "acted diligently enough" so as to invoke the applica-tion of equitable tolling to the running of the November 25, 2004 limitations period. Unfortunately for Lowther and the Trustee, however, the Court finds that the Trustee's Joinder was not even executed by the Trustee until at some point subsequent to the passage of the November 25, 2004 limitations period—the Court so finds, *inter alia* but primarily, because the Trustee's Joinder, which document is undated, was not even docketed with the Court until December 13, 2004. Because the Court finds that the Trustee's Joinder did not exist at any point prior to the passage of the November 25, 2004 limitations period, the Court cannot attribute to the Trustee, at least prior to November 25, 2004, any of the diligence that was undertaken by Lowther regarding discovery with respect to the aforesaid alleged transfer—put differently, the Court cannot find that the Trustee, by virtue of the Trustee's Joinder, has indirectly sought the production of the documents in question at any point prior to the passage of the November 25, 2004 limitations period.[4] Furthermore, the Court understands the Trustee himself to not have sought any discovery on the alleged transfer in question to date. All of the foregoing is fatal to an argument that the Trustee has acted diligently enough so as to invoke the application of equitable tolling, particularly given that the Court finds that the Trustee was aware, or should have been aware, of the possibility that such alleged fraudulent conveyance may have occurred in time so that he could then have undertaken, prior to November 25, 2004, discovery himself regarding the same;[5] indeed, the Court

**4.** That the Debtor has refused to hand over to Lowther himself documents relevant to the alleged fraudulent conveyance in question is both (a) irrelevant to either the diligence of the Trustee in discovering such conveyance or, consequently, the issue of equitable tolling, and (b) justified, as it turns out, given that, as set forth above, Lowther presents no good reason as to why he is entitled to such documents.

**5.** The Court finds that the Trustee should have been aware of the possibility that such alleged fraudulent conveyance may have occurred by,

finds that the Trustee had, or should have had, an awareness of such possibility such that he could have even properly filed, or sought an extension of time to file, an avoidance action prior to November 25, 2004. Because the Trustee has not acted diligently enough so as to invoke the application of equitable tolling to the running of the November 25, 2004 limitations period, and since the Trustee has thus far failed to bring an avoidance action regarding the alleged fraudulent conveyance in question, the Trustee is now time barred from bringing such action.

 Lowther also contends in his brief in support of the Motion to Compel that, "to the extent that the Trustee pursues the imposition of a constructive trust on a part of the Debtor's home, the action is one in equity and not susceptible to a statute of limitations." The constructive trust to which Lowther refers is that which the Court referred to in the August 24, 2004 Court Order as a remedy that it would provide to the Trustee were he to succeed, on behalf of the Allegheny bankruptcy estate, in avoiding the alleged fraudulent conveyance in question pursuant to § 544(b)(1). *See* August 24, 2004 Court Order, at ¶ 6. As support for such argument by Lowther, Lowther cites to *Silk v. Miller (In re CS Associates)*, 167 B.R. 368 (E.D.Pa.1994), wherein the *Silk* court held, *inter alia*, that (a) the 2–year statute of limitations in § 546(a)(1) is inapplicable to the bringing of an action under 11 U.S.C. § 723 by a bankruptcy trustee, *see Silk*, 167 B.R. at 369 n. 4, (b) a § 723 action is decidedly equitable in nature, in part, because equitable relief is thereby sought, *see Id.* at n. 3, and (c) § 546(a)(1) is inapplicable to a § 723 action because (i) such an action is equitable in nature, and (ii) "no federal statute of limitations [is] made applicable—either expressly or through a borrowing analysis—to this § 723 action," least of all the statute of limitations provided for under § 546(a)(1), *see Id.* at n. 4. *Silk* is easily distinguishable from the instant matter for at least two reasons. First, a fraudulent conveyance avoidance action brought by way of § 544(b)(1) is, in contrast to a § 723 action, not equitable in nature, and regardless of whether equitable relief in the form of a constructive trust is thereby sought—such an action is legal in nature regardless of the nature of the remedy sought. *See In re AVN Corp.*, 235 B.R. 417, 421–22 (Bankr.W.D.Tenn.1999) (citing to *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), and holding that (a) a fraudulent conveyance action is legal in nature, and (b) "[a]nnexing an equitable remedy to a legal or statutory cause of action will not transform the legal nature of an action into an action at equity"); [6] *In re Roberts*, 126 B.R. 678, 681–83 (Bankr.W.D.Pa.1991) (citing to the same U.S. Supreme Court precedent and

---

at the latest, that point when he was served with the Debtor's answer to Lowther's adversary complaint, or September 7, 2004. The Court so finds because (a) the August 24, 2004 Court Order discusses such alleged fraudulent conveyance at length, *see* August 24, 2004 Court Order, at ¶¶ 4 & 6, (b) a copy of the August 24, 2004 Court Order is attached as Exhibit C to the Debtor's answer, and (c) the Debtor's answer was served on the Trustee, *see* Cert. of Service to Debtor's Answer.

6. Significantly, the Court notes that even the *Silk* court only partially based its decision that a § 723 action is equitable in nature on the type of relief that is thereby sought; the primary basis for such decision by the *Silk* court was that a " § 723 action is essentially an action for an accounting, which was historically an equitable claim," *Silk*, 167 B.R. at 369 n. 3.

holding as did the *AVN* court). Because a fraudulent conveyance action is legal rather than equitable in nature, it is, in contrast to at least some equitable actions, subject to applicable statutes of limitation. Second, and perhaps more importantly, however, *Silk*, as set forth above, also held that a § 723 action is not subject to statutes of limitation because none are made applicable to the same—the *Silk* court acknowledged, as it must, that equity actions are subjected to statutes of limitation that plainly apply to the same, *see Silk*, 167 B.R. at 369 n. 4 ("Under federal law, it is well settled that 'equity, *in the absence of any statute of limitations made applicable to equity suits*, has provided its own rule of limitations through the doctrine of laches'"). The import of the preceding is that, were § 723 made subject to the limitations period contained within § 546(a)(1), then a § 723 action would be susceptible to such statute of limitations regardless of the fact that such action is equitable rather than legal in nature. An avoidance action brought under § 544(b)(1) is, in contrast to an action under § 723, expressly made subject to the limitations period contained in § 546(a)(1). *See* 11 U.S.C.A. § 546(a) (West 1993 & Supp.2004). Therefore, it frankly matters not whether a § 544(b)(1) fraudulent conveyance action is legal or equitable in nature; regardless of which, such action is subject to the § 546(a)(1) statute of limitations.

### III.

Given the present status of the instant adversary proceeding, the Court declines the Debtor's request that a pretrial order presently be entered in the instant matter. Instead, the Court hereby schedules a status conference for the instant adversary proceeding to be held on **May 12, 2005, at 10:30 a.m.**

### IV.

**IN SUMMARY,** (a) the Motion to Compel is **GRANTED in part and DENIED in part** as set forth, and for the reasons given, above, and (b) a status conference is scheduled for **May 12, 2005, at 10:30 a.m.,** in **Courtroom B, 54th Floor USX Tower, 600 Grant Street, Pittsburgh, Pennsylvania.**